# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————————————————— )
GEORGE EMORY, et al.,                                )
                                                     )
                      Plaintiffs,                    )
                                                     )
          v.                                         )          Civil Action No. 08-2227 (RBW)
                                                     )
UNITED AIR LINES, INC. and                           )
AIR LINE PILOTS ASSOCIATION,                         )
INTERNATIONAL,                                       )
                                                     )
                      Defendants.                    )
———————————————————————— )

## MEMORANDUM OPINION

George Emory, Larry Voll, Lorenzo Sein, Robert Bennett, David Hayes, Dennis Higham,

Richard Lanier, and Dean May, the plaintiffs in this civil suit, seek redress based on (1) alleged

discrimination on the basis of age in violation of the Age Discrimination in Employment Act of

1967 ("ADEA"), 29 U.S.C. §§ 621-634 (2006), by United Airlines ("United") and the Air Line

Pilots Association, International ("ALPA"), First Amended Complaint ("Am. Compl.") ¶¶ 66-

72; (2) alleged fraud and misrepresentation by United and the ALPA, Am. Compl. ¶¶ 80-92;[1] (3)

the ALPA's alleged breach of the duty of fair representation under the Railway Labor Act (the

"RLA"), 45 U.S.C. §§ 151-88 (2006), id. ¶¶ 73-75; and (4) United's alleged wrongful discharge

of the plaintiffs based on their age, id. ¶¶ 76-79.  The plaintiffs' claims arise out of their

"involuntary termination" by United in December 2007, id. ¶ 11, in accordance with a federal

---

[1] The plaintiffs refer to their fraud claim as one for "fraud and misrepresentation."  It is clear, however, from the complaint and their briefings that they are asserting a claim for fraudulent misrepresentation.  See, e.g., Pls.' United Opp'n at 36 n.21 (citing Standardized Civil Jury Instructions for the District of Columbia, sections 20.01 and 20.02, for the elements of a cause of action for "fraud and misrepresentation"); see also Standardized Civil Jury Instructions for the District of Columbia §§ 20.01, 20.02 (elements of a claim for fraudulent misrepresentation).  The terms "fraud and misrepresentation" and "fraudulent misrepresentation" are therefore used interchangeably in this opinion.

regulation promulgated by the Federal Aviation Administration ("FAA") that "barred pilots from flying commercial, passenger aircrafts once they reached the age of 60," id. ¶ 19(a) (citing 14 C.F.R. § 121.383(c) (2007) ("Age 60 Rule")), even "though [the d]efendants knew or should have known that each [plaintiff purportedly] met the statutory requisites" of the Fair Treatment for Experience Pilots Act ("FTEPA" or "Act"), Pub. L. No. 110-135, 121 Stat. 1450 (2007) (codified at 49 U.S.C. § 44729), id. ¶ 11. The FTEPA was enacted on December 13, 2007, and it permits pilots to fly commercial, passenger aircraft until the age of sixty-five. Id. ¶ 22. The plaintiffs therefore claim that they "had the statutory right to continue to fly in their positions [as pilots] without loss of seniority." Id. ¶ 11. Consequently, the plaintiffs seek declaratory relief, as well as compensatory and punitive damages as redress for their terminations. Id. ¶¶ 68, 72, 75, 79, 92.

The plaintiffs also challenge the constitutionality of the FTEPA as "depriv[ing them] . . . of Due Process for denial of [c]ontract and [p]roperty rights under the Fifth Amendment," id. ¶ 94, "den[ying them] . . . fair treatment under the Equal Protection Clause of the Fifth Amendment," id. ¶ 95, and constituting a "Bill of Attainder in violation of Article I, Section 9 of the U.S. Constitution . . . [because it] imposes severe penal measures—loss of the highest career earnings in a profession—on a very small definable group of plaintiff pilots," id. ¶ 96.

Currently before the Court are the following motions: a motion to dismiss for failure to state a claim upon which relief can be granted filed by defendant ALPA, a motion for summary judgment filed by defendant United, and a cross-motion for partial summary judgment filed by the plaintiffs. Upon carefully considering the plaintiffs' First Amended Complaint, the parties'

motions, and all memoranda and exhibits submitted with these filings,[2] the Court concludes that it must grant the ALPA's motion, grant in part and deny in part United's motion, and deny the plaintiffs' motion for the reasons that follow.

# I. Background[3]

A.    Statutory and Regulatory Framework

A brief overview of the statutes and regulations at issue will help elucidate the plaintiffs' allegations in this case.  In 1959 the FAA adopted the Age 60 Rule, which prohibited pilots from flying commercial airliners past their sixtieth birthday.  See 14 C.F.R. § 121.383(c).[4]  The FTEPA abrogated the Age 60 Rule, providing that the Age 60 Rule "shall cease to be effective" on the FTEPA's enactment date of December 13, 2007, and permitted pilots to fly commercial

---

[2]  In addition to the plaintiffs' First Amended Complaint and the parties' motions, the Court considered the following memoranda, and exhibits attached thereto, in reaching its decision: (1) the Memorandum of Law and Authorities in Support of Motion to Dismiss of Defendant Air Line Pilots Association, International ("ALPA Def.'s Mem."); (2) the Plaintiffs' Opposition to Defendant ALPA's Motion to Dismiss First Amended Complaint ("Pls.' ALPA Opp'n"); (3) the Plaintiffs' Opposing Points and Authorities to Defendant ALPA's Motion to Dismiss ("Pls.' Supp. ALPA Opp'n"); (4) the Reply of Defendant Air Line Pilots Association, International in Support of Its Motion to Dismiss ("ALPA Def.'s Reply"); (5) United Air Lines, Inc.'s Memorandum of Points and Authorities in Support of Its Motion for Summary Judgment ("United Def.'s Mem."); (6) the Plaintiffs' Opposition to Defendant United Air Lines' Motion for Summary Judgment ("Pls.' United Opp'n"); (7) United Air Lines, Inc.'s Reply Memorandum of Points and Authorities in Support of Its Motion for Summary Judgment ("United Def.'s Reply"); (8) United Air Lines, Inc.'s Response to Plaintiffs' Supplemental Affidavits in Opposition to Motion for Summary Judgment; (9) the Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Partial Summary Judgment Against Defendant United for Count 1 Age Discrimination and for a Finding of Reckless Disregard of the Law ("Pls.' Mem."); (10) United Air Lines, Inc.' Memorandum of Points and Authorities in Support of Its Opposition to Plaintiffs' Motion for Summary Judgment ("United Def.'s Opp'n"); (11) the Plaintiffs' Reply to Defendant United's Opposition to Plaintiffs' Motion for Summary Judgment on Count 1 ("Pls.' Reply"); and (12) the Plaintiffs' Statement of Supplemental Authority with Request for Hearing on Pending Motions ("Pls.' Supp. Auth.").

[3]  The plaintiffs' complaint is replete with references to legal theories and conclusions of law.  Below, the Court attempts to summarize the relevant factual allegations without reference to legal conclusions.  Also, except where noted, the following facts are not in dispute.

[4]  The Age 60 Rule states, in relevant part:

> No certificate holder may use the services of any person as a pilot on an airplane engaged in operations under this part if that person has reached his 60th birthday. No person may serve as a pilot on an airplane engaged in operations under this part if that person has reached his 60th birthday.

14 C.F.R. § 121.383(c).

airliners until they reached the age of sixty-five.  See 49 U.S.C. § 44729(a), (d).  However, the

FTEPA has only prospective application and contains a "non-retroactivity" provision that

significantly limits the ability of pilots who turned sixty before the FTEPA's passage to return to

work as pilots.  The non-retroactivity provision states:

> No person who has attained 60 years of age before the date of
> enactment of this section may serve as a pilot for an air carrier
> engaged in covered operations unless –
>
> (A) such person is in the employment of that air carrier in such
> operations on such date of enactment as a required flight deck crew
> member; or
>
> (B) such person is newly hired by an air carrier as a pilot on or
> after such date of enactment without credit for prior seniority or
> prior longevity for benefits or other terms related to length of
> service prior to the date of rehire under any labor agreement or
> employment policies of the air carrier.

49 U.S.C. § 44729(e)(1).  The FTEPA defines "covered operations" as "operations under part

121 of title 14, Code of Federal Regulations" ("Part 121 operations"), § 44729(b), which are the

same operations formerly covered by the Age 60 Rule.  Thus, pilots who turned sixty before

December 13, 2007, the date of the FTEPA's enactment, may fly commercial airliners only if

they were employed as a "required flight deck crew member" in Part 121 operations on

December 13, 2007, or if they are newly hired on or after December 13, 2007, and work without

credit for any prior experience.  The FTEPA also contains a "protection for compliance"

provision.  This provision states that

> [a]n action taken in conformance with [the FTEPA] . . . or taken
> prior to the date of enactment of this section in conformance with
> [the Age 60 Rule], may not serve as a basis for liability or relief in
> a proceeding, brought under any employment law or regulation,
> before any court or agency of the United States or of any State or
> locality.

Id. § 44729(e)(2).

B.      Factual and Procedural Background

United is an airline passenger carrier engaged in Part 121 operations, Am. Compl. ¶ 14(a), and the ALPA is a labor organization that represents "all members of the airline piloting profession," id. ¶ 15(a). At all times relevant to this litigation, the ALPA was the collective bargaining representative for pilots employed by United under a Collective Bargaining Agreement ("CBA"). Id. ¶ 14(a). Also, at all times relevant to this case, each plaintiff was an intended beneficiary or third-party beneficiary of the CBA. Id. The CBA therefore governed "[t]he contractual relationship between each plaintiff pilot as an employee and defendant United as an employer." Id. ¶ 14(b).

Each of the eight plaintiffs was born in December 1947 and was employed by United as either a captain or first officer at the time each of them turned sixty years of age, their birthdays all falling on dates between December 3 and December 11, 2007. Id. ¶¶ 12-13. On their sixtieth birthday, each was removed from active flight status but retained their seniority numbers and remained employed by United until December 31, 2007, when the plaintiffs were all "involuntarily terminated." Id. ¶ 12. It was the customary practice of United to permit pilots who reached their sixtieth birthdates to remain as United employees "until the last day of the month in which each turned 60." Id. ¶ 20.

None of the plaintiffs, as they approached their sixtieth birthday, sought a transfer to a different position within United. United Air Lines, Inc.'s Statement of Material Facts In Support of Its Motion for Summary Judgment ("United's SOF") ¶¶ 12-13.[5] However, in anticipation of

_____

[5] Although the plaintiffs contend that whether they failed to seek a transfer to another position for which they were qualified is in dispute, the plaintiffs' factual allegations actually admit that none of the plaintiffs requested positions as non-pilots, but rather only sought positions as pilots. See Plaintiffs' Statement of Material Facts in Genuine Dispute ("Pls.' Disputed SOF") ¶ 4. Accordingly, this fact is not actually in dispute.

the FTEPA's enactment, each plaintiff did request in December 2007 that they continue as pilots after December 12, 2007. Am. Compl. ¶¶ 50-56. But United and the ALPA interpreted the non-retroactivity limitation provided by exception (A) of the FTEPA to apply solely to flight engineers, and denied the plaintiffs' requests. Id. ¶¶ 24, 25, 28(a), 49, 50(a). George Emory, Larry Voll, and John Bennett also requested, and Larry Voll actually applied on United's Skynet Flight Operations website ("Skynet") for a new hire pilot position with United in late December pursuant to exception (B).[6] Id. ¶¶ 51(f), 53(d); Pls. Mem., Nov. 4, 2009 Sworn Declaration of John Bennett ("Bennett Decl.") at 2. On December 20, 2007, the FAA issued an Information for Operators ("InFO") entitled "Legal Interpretation Regarding the Age 65 Law," which noted that

> a person who was in the employment of an air carrier when he/she attained 60 years of age before December 13, 2007, but who was not conducting part 121 operations for the carrier as a required flight deck crew member may not continue employment with the air carrier[, but t]o continue employment as a pilot under [exception (B)], that person must be treated by the carrier as a 'newly hired pilot . . . without credit for prior seniority' . . . .

Am. Compl. ¶ 51(g); Pls.' Mem., Exhibit ("Ex.") 1 (Dec. 20, 2007 InFO). Furthermore, on March 13, 2008, the FAA published another informational statement advising air carriers that check airmen (also known as second officers) over age sixty and employed as of December 13, 2007, were reasonably considered "required flight deck crew members."[7] Am. Compl. ¶ 40.

The plaintiffs repeatedly communicated with United and the ALPA both before and after the FTEPA's enactment regarding the FTEPA's application to them and the continuation of their

---

[6] Skynet is United's intranet system, accessible to all United employees, where employees may apply for transfers to a different position within the company. United's SOF ¶ 12.

[7] Check airmen are crew members "required by FAA safety rules for part 121 operators to complete FAA-required line checks and the like of other part 121 pilots." Pls.' Mem., Ex. 2 (Mar. 13, 2008 InFO). The March 13, 2008 InFO explained that check airmen might be considered required flight deck crew members because "when such checks were completed in airborne aircraft, the presence of these individuals was required in order for the check to count as meeting FAA safety requirements." Id.

employment.  See id. ¶¶ 51-56; Pls.' Mem., Bennett Decl. at 2; Pls.' Mem., Nov. 10, 2009

Statement of Dean May Concerning the Events Leading Up To and Following December 13,

2007 ("May Decl.").  The plaintiffs allege that the ALPA concealed from them "procedures

necessary to preserve their rights under the FTEPA."  Id. ¶ 50(b).  They also claim that United

"dissembled, rebuffed, avoided, ignored, and declined each plaintiff's communication both

requesting continued employment with United as a pilot after December 12, 2007[,] and

requesting clarification and explanation of the [FTEPA's] impact upon these December 1947-

born pilots."  Id. ¶ 50(c).

     After the plaintiffs' employment was terminated on December 31, 2007, they contend

that the ALPA "continued to . . . promote[] its . . . interpretation of the exception [to the non-

retroactivity provision]."  Am. Compl. ¶ 60.  Specifically, the plaintiffs allege that the ALPA (1)

communicated with "members of Congress to deny the exception to non-retroactivity to this

plaintiff class of pilots," id. ¶ 60(a); (2) "fil[ed] a brief . . . as an amicus curiae in litigation

between union members and the FAA in the U.S. Court of Appeals for the D.C. Circuit . . .  to

promote its . . . interpretation of the FTEPA exception to [the] nonretroactivity [provision]," id. ¶

60(b) (citing Adams v. FAA, 550 F.3d 1174 (D.C. Cir. 2008)); (3) "draft[ed] and promot[ed]

correspondence to the FAA and [requested] . . . that Congressman Oberstar send a letter to the

FAA asking the FAA to withdraw [its] March 2008 publication," id. ¶ 60(c); (4) "provid[ed]

misleading and false advice to [the] plaintiff[s] . . . [regarding whether they] should file a

grievance with [the] ALPA . . . and . . . lulled these plaintiff pilots into not filing grievances or

charges of breach of duty to fairly represent against [the] ALPA," id. ¶ 60(d); (5)

"communicat[ed] with United, the FAA, and members of Congress, [and] . . . advance[ed] the . .

. explanation that the exception to non-retroactivity in the Age 65 Law was limited to flight

engineers," id. ¶ 60(e); (6) "fil[ed] a collective bargaining grievance in [the] ALPA's name on September 29, 2008[,] against . . . Continental Air Lines . . . attack[ing] Continental's interpretation of the exception (A) to [the] non-retroactivity [provision] in the FTEPA," id. ¶ 60(f); and (7) "refus[ed] through December 24, 2008[,] to assist any senior pilot member of [the] ALPA employed by a Part 121 carrier on December 13, 2007[,] in challenging . . . United's refusal to afford the benefit of . . . exception (A) to [the] non-retroactivity [provision] in the FTEPA to such senior pilot," id. ¶ 60(g).

As a result of the alleged foregoing events, six of the eight plaintiffs filed age discrimination charges against United with the Equal Employment Opportunity Commission ("EEOC"). Am. Compl. ¶ 61. First, on July 1, 2007, prior to the FTEPA's enactment and in anticipation of his nearing sixtieth birthday, George Emory filed an EEOC charge against United alleging that the FAA and United

> have failed to support the new [international] standard [of not requiring pilots to retire until they reach the age of sixty-five] and lift the existing [A]ge 60 [R]ule. As a result, [p]ilots for American carriers have been and will continue to be terminated when they reach 60 years of age. I have also recently been denied a leave of absence request.

United Def.'s Mem., Appendix ("App.") C (Emory's July 1, 2007 EEOC charge). Emory further stated that he believed that "myself and a class of employees have been discriminated against because of our age, 60, in violation of the [ADEA]." Id. Then, following the enactment of the FTEPA, George Emory and five other plaintiffs filed charges with the EEOC alleging age discrimination under the ADEA. Am. Compl. ¶ 61; United Def.'s Mem., App. B (EEOC charges of six plaintiffs). Each EEOC charge states the date on which the plaintiffs began working for United, that their most recent position was as a pilot, that they were discharged on January 1, 2008, and that "I believe I have been discriminated against because of my age, 60 . . . in violation

of the [ADEA]." United Def.'s Mem., App. B (EEOC charges of six plaintiffs). The plaintiffs subsequently received EEOC "right to sue" letters in September and October of 2008. Am. Compl. ¶ 61.

George Emory also filed an EEOC charge against the ALPA alleging age discrimination under the ADEA. Id. ¶ 63. The charge noted that it was for a "continuing action" for the ALPA's refusal to assist union members in repealing the Age 60 Rule, id., and for actively "lobbying against a change in the [A]ge 60 [R]ule," Pls.' Supp. ALPA Opp'n, Ex. 1 (Emory January 22, 2007 EEOC Intake Questionnaire). Specifically, the charge states:

> I. I began my employment with United Airlines on January 22, 1979 as a Pilot. On December 8, 2007, I will be turning sixty years old. I will be subjected to the Age 60 Rule, which bars individuals who have reached their sixtieth birthday from serving as pilots or co-pilots in flight operations governed by commercial flights. The union supports the Age 60 Rule. Lobbyist[s] have been supported by both union, the Air Line Pilots International and United Airlines ALPA Master Executive Counsel (MEC).
>
> II. I believe the union's support of this rule discriminates in that it eliminates experienced pilots.

ALPA Def.'s Mem., Ex. 1 (Emory March 11, 2007 EEOC charge against the ALPA). The EEOC continued to process Emory's charge against the ALPA until April 9, 2009, when the EEOC issued a right to sue letter. Am. Compl. ¶ 63.

Based on these factual allegations, the plaintiffs filed a complaint in this Court on December 24, 2008.[8] The complaint was amended on August 18, 2009, and seeks relief under a variety of legal theories: violation of the ADEA with respect to United (Count 1), id. ¶¶ 66-68,

---

[8] The initial complaint included claims for violation of the ADEA with respect to United Airlines (Count 1), Complaint ¶¶ 43-45, breach of the duty of fair representation and breach of fiduciary duty with respect to the ALPA (Count 2), id. ¶¶ 46-49, breach of contract and wrongful discharge with respect to United (Count 3), id. ¶¶ 50-53, fraud and misrepresentation with respect to both defendants (Count 4), id. ¶¶ 54-61, and an alternative challenge to the constitutionality of the FTEPA (Count 5), id. ¶¶ 62-67.

and separately with respect to the ALPA (Count 2), id. ¶¶ 69-72, breach of the duty of fair

representation and breach of fiduciary duty with respect to the ALPA (Count 3), id. ¶¶ 73-75,

wrongful discharge with respect to United (Count 4), id. ¶¶ 76-79, and fraud and

misrepresentation with respect to both defendants (Count 5), id. ¶¶ 80-92. "Alternatively," the

plaintiffs seek a determination that the FTEPA is unconstitutional as "depriving these plaintiff

pilots of Due Process for denial of [c]ontract and [p]roperty rights under the Fifth Amendment,"

id. ¶ 94, "den[ying] these plaintiff pilots fair treatment under the Equal Protection Clause of the

Fifth Amendment," id. ¶ 95, and constituting a Bill of Attainder, id. ¶ 96.

On September 25, 2009, the ALPA filed a motion to dismiss the Amended Complaint for

failure to state a claim upon which relief may be granted with respect to all of the claims against

them (Counts 2, 3, and 5). Dkt. 34. United then filed a motion for summary judgment on

October 9, 2009. Dkt. 36. Thereafter, on March, 10, 2010, the plaintiffs filed their own motion

for partial summary judgment against United with respect to the ADEA claim (Count 1). Dkt.

57.

## II. Standards of Review

A.    Motion to Dismiss for Failure to State a Claim under Rule 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests whether a

complaint has properly stated a claim upon which relief may be granted. Woodruff v. DiMario,

197 F.R.D. 191, 193 (D.D.C. 2000). For a complaint to survive a Rule 12(b)(6) motion, Federal

Rule of Civil Procedure 8(a) requires that it contain "a short and plain statement of the claim

showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although Rule 8(a) does

not require "detailed factual allegations," a plaintiff is required to provide "more than an

unadorned, the-defendant-unlawfully-harmed-me accusation," Ashcroft v. Iqbal, ___ U.S. ___,

___, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-57 (2007)), in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," Twombly, 550 U.S. at 555 (omission in original). In other words, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, ___ U.S. at ___, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 547). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). A complaint alleging facts which are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief." Id. (quoting Twombly, 550 U.S. at 557) (internal quotation marks omitted).

In evaluating a Rule 12(b)(6) motion under this framework, "[t]he complaint must be liberally construed in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979) (internal quotation marks and citations omitted), and the Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the Court] may take judicial notice," EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997) (footnote omitted). Although the Court must accept the plaintiffs' factual allegations as true, any conclusory allegations are not entitled to an assumption of truth, and even those allegations pleaded with factual support need only be accepted to the extent that "they plausibly give rise to an entitlement to relief." Iqbal, ___ U.S. at ___, 129 S. Ct. at 1950. If "the [C]ourt finds that the plaintiff[] has failed to allege all the material elements of [his] cause of action," then the Court may dismiss the complaint without prejudice, Taylor v. FDIC, 132 F.3d 753, 761 (D.C. Cir. 1997), or with prejudice,

provided that the Court "determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency," <u>Firestone v. Firestone</u>, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (internal quotation marks and citations omitted).

B.    <u>Motion for Summary Judgment or Partial Summary Judgment under Rule 56</u>

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine which facts are "material," a court must look to the substantive law on which each claim rests. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Anderson</u>, 477 U.S. at 248.

When ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party. <u>Holcomb v. Powell</u>, 433 F.3d 889, 895 (D.C. Cir. 2006) (citing <u>Reeves v. Sanderson Plumbing Prods.</u>, 530 U.S. 133, 150 (2000)). The Court must therefore draw "all justifiable inferences" in the non-moving party's favor and accept the non-moving party's evidence as true. <u>Anderson</u>, 477 U.S. at 255. The non-moving party, however, cannot rely on "mere allegations or denials of the adverse party's pleading," <u>Burke v. Gould</u>, 286 F.3d 513, 517 (D.C. Cir. 2002) (quoting <u>Anderson</u>, 477 U.S. at 248), and "must do more than simply show that there is some metaphysical doubt as to the material facts," <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986) (citation omitted). Simply put, "conclusory allegations unsupported by factual data will not create a triable issue of fact." <u>Pub. Citizen Health Research Grp. v. FDA</u>, 185 F.3d 898, 908 (D.C. Cir. 1999) (internal quotation marks and citations omitted). To survive a properly supported motion for summary judgment,

the non-moving party must show that a genuine factual issue exists by "citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c). Any factual assertions in the moving party's affidavits will be accepted as being true unless the opposing party submits his own affidavits or other documentary evidence contradicting the assertion. Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992). In addition, only affidavits "made on personal knowledge . . . [and] set[ting] out facts that would be admissible in evidence" will be considered. Fed. R. Civ. P. 56(c)(4).

## III. Legal Analysis

A.      Application of the FTEPA

As an initial matter, the Court must determine whether the FTEPA retroactively applied to the plaintiffs in this case, and whether the protection accorded by the compliance provision of the FTEPA bars the plaintiffs' age discrimination claims against United and the ALPA.

1.      Exception (A) to the Non-retroactivity Provision of the FTEPA

The defendants contend that the FTEPA prevented the plaintiffs from continuing their employment in Part 121 operations with their prior seniority because each of the plaintiffs turned sixty while the Age 60 Rule was still in effect, and therefore were barred from serving as pilots in such operations. ALPA Def.'s Mem. at 10; United Def.'s Mem. at 17-18. While the defendants admit that the plaintiffs were technically employed by United on December 13, 2007, ALPA Def.'s Mem. at 10; United Def.'s Reply at 4, they contend that the FTEPA's exception (A) to the non-retroactivity provision "requires more than mere employment." ALPA Def.'s Mem. at 10; United Def.'s Mem. at 18. The defendants read the words "in such operations" in

exception (A) as modifying who is a "person" "in the employment of" an air carrier,[9] ALPA

Def.'s Reply at 4-6; United Def.'s Reply at 6, thereby construing the statute to have two

requirements for satisfaction of the exception: (1) that the pilot was employed in Part 121

operations on the date of the FTEPA's enactment, and (2) that the pilot was employed on that

date as a "required flight deck crew member."  ALPA Def.'s Reply at 3-6; United Def.'s Reply

at 6.  The defendants claim that neither requirement has been satisfied by the plaintiffs.  ALPA

Def.'s Reply at 4; ALPA Def.'s Mem. at 10, 11 & n.4; ALPA Def.'s Reply at 6; United Def.'s

Mem. at 17-18.  In response, the plaintiffs argue that the statute only requires that the pilot be

employed as a "required flight deck crew member" for a carrier that engages in Part 121

operations because the words "in such operations" in exception (A) modifies the word "carrier"

and not the word "person," Pls.' ALPA Opp'n at 7-8, and that the term "required flight deck

crew member" includes pilots, Pls.' United Opp'n at 9.  For the following reasons, the Court

finds that the FTEPA does not apply retroactively to the plaintiffs.

It is clear from a plain reading of the statute that both exceptions to non-retroactivity of

the FTEPA refer to the status of the "person" seeking the exception to the Age 60 Rule provided

in the general provision.  See § 44729(e)(1); see also Engine Mfrs. Ass'n v. S. Coast Air Quality

Mgmt. Dist., 541 U.S. 246, 252 (2004) ("Statutory construction must begin with the language

employed by Congress and the assumption that the ordinary meaning of that language accurately

expresses the legislative purpose." (citation omitted)).  Thus, the plain language of exception (A)

requires that employees over age sixty seeking to serve as a pilot for Part 121 carriers be

---

[9]  Exception (A) to the non-retroactivity provision states that no person over age sixty may serve as a pilot for an air carrier engaged in Part 121 operations unless "such person is in the employment of that air carrier in such operations on such date of enactment as a required flight deck crew member."  § 44729(e)(1)(A).

employed on December 13, 2007, (1) in Part 121 operations (2) as a "required flight deck crew member."

The defendants contend that because the Age 60 Rule, which was applied to the plaintiffs on their sixtieth birthdays, "barred each of them from serving as a pilot on aircraft in Part 121 operations," the plaintiffs could not be employed in Part 121 operations on the date of the FTEPA's enactment. ALPA Def.'s Reply at 4; United Def.'s Mem. at 17. The plaintiffs, on the other hand, allege that because the Age 60 Rule "cease[d] to be effective" on December 13, 2007, the Age 60 Rule did not diminish the plaintiffs' piloting eligibility in Part 121 operations as of December 13, 2007. Pls.' ALPA Opp'n at 2-3; see Pls.' United Opp'n at 15. The Court agrees that the plaintiffs were employed in Part 121 operations on December 13, 2007.

Further application of the plain language of the Age 60 Rule renders the conclusion that when the plaintiffs reached the age of sixty, they were no longer permitted to serve as pilots on airplanes engaged in commercial carrier service. See 14 C.F.R. § 121.383(c). They were, however, permitted to serve in other capacities on an airplane providing commercial carrier service. See id.; see also, e.g., 14 C.F.R. § 121.411(e) (permitting those over age sixty to serve as check airmen in Part 121 operations). Thus, when United removed the plaintiffs from their status as pilots, but did not immediately retire them, they remained employed in Part 121 operations.

However, in order for the FTEPA to apply retroactively to the plaintiffs, they also had to be employed as required flight deck crew members on the date of enactment of the FTEPA. See § 44729(e)(1)(A). The Age 60 Rule, which still applied to the plaintiffs on their birthdates, required that they be removed from their positions as pilots (captains and first officers) as of their sixtieth birthdates, but did not affect the status of check airmen and flight engineers. Therefore,

for purposes of the FTEPA, captains and first officers who had reached the age of sixty would not have been employed as a "required flight deck crew member" on the date of the FTEPA's enactment.[10]

The Central District of California addressed this same issue in a factually analogous case. Weiland v. American Airlines, Inc., No. SACV 10-1451 JVS (SSx), 2011 WL 925408 (C.D. Cal. Feb. 18, 2011), involved a check airman for American Airlines whose duties included piloting service. Weiland, 2011 WL 925408, at *1. The plaintiff turned sixty on December 7, 2007, id., and as a result of his piloting duties he was subjected to the Age 60 Rule just days before the FTEPA's enactment, id. at *1, *4. The plaintiff, however, remained employed by American Airlines until the end of December 2007. Id. at *1. The Court held that the plaintiff was not a required flight deck crew member on December 13, 2007. Id. at *5.[11]

The Court agrees with Weiland. The plaintiff pilots in this case were not, and could not have been, employed as pilots after their respective birthdates. See 14 C.F.R. § 121.383(c). They also had not been reassigned to another "required flight deck crew member" position, such as a flight engineer or check airman. See United's SOF ¶¶ 12-13; Pls.' Disputed SOF ¶ 4. Thus,

---

[10] The plaintiffs argue in their supplemental filing that the United-Continental merger requires that United be judicially estopped from arguing that the plaintiffs in this case were "legally disqualified" from flying as pilots with United under the FTEPA. See Pls.' Supp. Auth. at 4-9. They base this argument on the fact that the former Continental Chief Pilot, who is now the United Chief Pilot and Senior Vice-president for Flight Operations following the merger, took the position while at Continental that "check airmen who reached age 60 before . . . the December 13, 2007, enactment of the FTEPA could continue flying as check airmen until age 65 with full seniority . . . under exception (A) to the non-retroactivity provision in the FTEPA," because they were "required flight deck crew members." Id. at 4-5. However, the plaintiffs in this case were not "employed as" required flight deck crew members on the date of the FTEPA's enactment because they, unlike check airmen, were subject to the Age 60 Rule. As such, the decision to permit over age sixty check airmen to continue flying under exception (A), but not over age sixty pilots, are not inconsistent positions that warrant application of the doctrine of judicial estoppel.

[11] The plaintiffs contend that Weiland was incorrectly decided and should not be followed by this Court because Weiland was a check airman, and, as such, remained employed as a required flight deck crew member following his sixtieth birthday. See Pls.' Supp. Auth. at 11-17. However, the court in Weiland made it clear that Weiland was more akin to a pilot than a check airman because his duties involved piloting. See Weiland, 2011 WL 925408, at *1. The Court therefore finds the plaintiffs' arguments concerning Weiland unpersuasive.

the plaintiffs were not employed as "required flight deck crew members" on December 13, 2007, see Weiland, 2011 WL 925408, at *5, and accordingly exception (A) to the non-retroactivity provision of the FTEPA does not apply to the plaintiffs.[12]

2. Exception (B) to the Non-retroactivity Provision of the FTEPA[13]

United claims that after the FTEPA was enacted, the plaintiffs failed to seek re-employment by United as newly hired pilots in order to continue their employment as pilots under the Act's exception (B) to its non-retroactivity provision. United Def.'s Mem. at 20. The plaintiffs contest the accuracy of United's representations. See Pls.' Disputed SOF ¶ 4; Am. Compl. ¶¶ 50(a); 51(f), 53(d); Bennett Decl. at 2. However, whether the plaintiffs sought re-employment as new hire pilots is irrelevant to exception (B)'s applicability. While one of the plaintiffs applied for a new hire position and others informed United of their desire to continue in their positions as pilots, see Am. Compl. ¶¶ 50-56; Bennett Decl. at 2, they were not actually hired by United as pilots after the enactment of the FTEPA. Moreover, United was not required

---

[12] The plaintiffs, citing Adams v. FAA, 550 F.3d 1174, 1175 (D.C. Cir. 2008) (holding that the "cease to be effective" language in the FTEPA served to moot requests to the FAA for waivers to the Age 60 Rule made by pilots who reached age sixty prior to the FTEPA's enactment), argue that the "cease to be effective" language in the FTEPA, which terminated the effectiveness of the Age 60 Rule, ended all prior effects of the Age 60 Rule, such that on December 13, 2007, the Age 60 Rule could not have any impact on any age sixty to sixty-four pilot's qualifications to serve as a pilot on commercial aircraft, Pls.' Mem. at 11-12, and therefore the bona fide occupational qualification defense also ceased to exist, id. at 15-16; Pls.' ALPA Opp'n at 3-4; Pls.' Supp. Auth. at 19-22; see also 29 U.S.C. § 623(f)(1) (listing as a defense to ADEA claims employer action based on age "where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business"). Based on this proposition, the plaintiffs contend that even if they had been deemed unqualified at age sixty to serve as commercial airline pilots in Part 121 operations, on December 13, 2007, they became re-qualified. The Court does not find this argument persuasive. The court in Adams did not hold that the requests for waivers to the Age 60 Rule were moot because the "cease to be effective" language eliminated the consequences of the Age 60 Rule, but rather because there no longer was an Age 60 Rule from which to seek a waiver. See Adams, 550 F.3d at 1175.

[13] It is unclear whether the plaintiffs believe that exception (B) to the non-retroactivity provision should have applied to those plaintiffs that applied for new hire positions or at least notified United of their desire to continue employment as new hire pilots, or whether the plaintiffs are only alleging that they were unable to avail themselves to exception (B) due to the defendants' alleged fraud and misrepresentations. See Pls.' United Opp'n at 5-6, 20-21, 34-35, 39. In any event, as explained below, the Court finds that exception (B) does not apply to any of the plaintiffs. The Court will also address the plaintiffs' arguments regarding their inability to rely on exception (B) as a result of alleged fraudulent misrepresentations later in this opinion.

under the Act to hire any out-of-service pilot who expressed an interest in continuing as a new hire pilot; the statute only provides an opportunity to apply for such a position. See 49 U.S.C. § 44729(e)(1)(B). Consequently, exception (B) of the FTEPA's non-retroactivity provision has no applicability to the plaintiffs in this case.

      3.     The FTEPA's Compliance Protection Provision

In addition to claiming that the FTEPA does not retroactively apply to the plaintiffs, the defendants contend that the plaintiffs' claims fail because they are immune from liability under the compliance protection provision of the FTEPA. ALPA Def.'s Mem. at 22; United Def.'s Mem. at 16. Specifically, United alleges that its removal of the plaintiffs from pilot service was required under the Age 60 Rule, United Def.'s Mem. at 16, and that the compliance protection provision "plainly absolves a carrier from any liability . . . alleged to result from the carrier's compliance with the Age 60 Rule prior to December 13, 2007," id.; United Def.'s Opp'n at 16. United further claims that by not applying exception (A) to the non-retroactivity provision to the plaintiffs, it also acted in compliance with the FTEPA. United Def.'s Opp'n at 16. The ALPA therefore contends that it too could not have violated the ADEA by permitting United to comply with the law. ALPA Def.'s Mem. at 14; ALPA Def.'s Reply at 9. The plaintiffs, on the other hand, argue that the defendants actions were not in conformance with the FTEPA, Pls.' ALPA Opp'n at 14-15; Pls.' United Opp'n at 17-18; Pls.' Mem. at 6, and that they are not suing the defendants for actions "taken in conformance with the Age 60 Rule," Pls.' ALPA Opp'n at 14; Pls.' Mem. at 6; Pls.' Reply at 24. In addition, the plaintiffs contend that the ALPA did not "have any direct duties or actions to be taken in conformance with the FTEPA" because they were not the employer, Pls.' ALPA Opp'n at 14, and therefore the compliance protection

provision of the FTEPA does not apply to the ALPA, id. at 14-15. The plaintiffs' positions must be rejected for several reasons.

First, the compliance protection provision plainly applies to the ALPA as well as United. See Avera v. ALPA ("Avera I"), ___ Fed. App'x ___, ___, 2011 WL 3476824, at *7 (11th Cir. 2011) (per curiam) (holding that compliance protection provision barred all claims against the ALPA predicated on its conformance with the Age 60 Rule and the FTEPA). The statutory text of the provision is not limited to employers, as the plaintiff suggests; it instead states in broad terms, and without qualification as to the parties to which it applies, that "[a]n action taken in conformance with this section . . . may not serve as a basis for liability." 49 U.S.C. § 44729(e)(2) (emphasis added). It would, moreover, be totally irrational to find that United is protected from suit when acting in compliance with the FTEPA, while finding that the ALPA can be sued for permitting United to take such action. Second, although the plaintiffs claim that they are only suing for those actions allegedly taken in conformance with the FTEPA after its enactment, it is clear that this reasoning is based solely on the plaintiffs' belief that the FTEPA retroactively applies to them. However, because the Court has determined that the FTEPA does not apply retroactively to the plaintiffs, actions taken in conformance with the Age 60 Rule and the FTEPA include United's application of the Age 60 Rule to the plaintiffs prior to the FTEPA's enactment, the removal of the plaintiffs from active pilot status, and United's refusal to apply the FTEPA retroactively to permit the plaintiffs to continue flying with their prior seniority. See Weiland, 2011 WL 925408, at *4-*5 (holding that the airline's actions—not scheduling the plaintiffs for work as of their sixtieth birthday and changing their status to inactive two days before the FTEPA's enactment—were in conformance with the Age 60 Rule "in effect on [their] sixtieth birthday, and the enactment of the FTEPA provided [them] with no

additional rights or remedies").  Thus, the plaintiffs' claims must be dismissed as to any aspect of

those claims based on the ALPA's or United's compliance with the Age 60 Rule or the

FTEPA.[14]

B.      The Constitutionality of the FTEPA[15]

The plaintiffs also raise, in the alternative, a challenge to the constitutionality of the

FTEPA.  More specifically, the plaintiffs allege violations of due process and equal protection,

both under the Fifth Amendment, and that the FTEPA constitutes a bill of attainder.  Am. Compl.

¶¶ 93-99.  The defendants assert that the FTEPA survives constitutional scrutiny.  ALPA Def.'s

Mem. at 22.  For the reasons that follow, the Court agrees with the defendants.

1.      The Fifth Amendment Equal Protection Challenge

The plaintiffs first contend that the FTEPA's non-retroactivity and compliance protection

provisions are discriminatory on the basis of age in violation of the Constitution's equal

protection guarantee.  Specifically, the plaintiffs allege that the FTEPA's non-retroactivity

provision "create[s] two age-based classes of pilots: those like the [plaintiffs] who turned 60

years old between December 1 and December 11, 2007[,] and those that reached age 60 on or

after December 13, 2007," and that "[i]t is not possible to find a rational basis for FTEPA denial

of relief to and infliction of blatant, arbitrary age discrimination upon, these December pilots"

---

[14]  The plaintiffs also argue that "[i]f this Court . . . interpret[s] the FTEPA to deny relief to [the plaintiffs] . . . there
would [be] direct conflict with the ADEA."  Pls.' ALPA Opp'n at 38.  However, "the ADEA places no substantive
limitation upon the [FAA's] authority to act as a regulator of the airline industry" because the ADEA prohibits
employers in the private sector and agencies of the federal government from discriminating upon the basis of age,
but does not "restrict the FAA from making age a criterion for employment when it[] acts in its capacity as the
guarantor of public safety in the air."  Prof'l Pilots Fed'n v. Fed. Aviation Admin., 118 F.3d 758, 763 (D.C. Cir.
1997).  Because the Court has determined that the Age 60 Rule applied to the plaintiffs, and the FAA promulgated
the Age 60 Rule, the Court's holding is not in direct conflict with the ADEA.  For the same reasons, denial of relief
under the FTEPA is not in direct conflict with the ADEA because the FTEPA was promulgated by Congress, and
nothing in the ADEA limits Congress's authority to restrict employment in the airline industry based on age.

[15]  United has adopted the ALPA's arguments supporting the constitutionality of the FTEPA.  United Def.'s Mem. at
31.  Therefore, the Court will only cite the ALPA's memoranda in addressing this issue.

absent any legislative history supporting the disparate treatment. Pls.' ALPA Opp'n at 37. The defendants, however, contend that "'[t]he lack of 'on the record' reasons for Congressional action 'has no significance in rational-basis analysis'" but rather the focus must be directed to whether "there is <u>any reasonably conceivable state of facts</u> that could provide a rational basis for the classification." ALPA Def.'s Reply at 19 (emphasis in original). The defendants further allege that (1) the purpose of a mandatory retirement age for pilots is rational in light of the concerns regarding the increased medical risks associated with flying a commercial passenger aircraft as a person ages, ALPA Def.'s Mem. at 27; (2) that the non-retroactive application of the FTEPA is rational because of the potential economic disruption that would result if all retired pilots between the ages of sixty and sixty-four were permitted to return to work with their past seniority, <u>id.</u>; <u>see also id.</u> at 23 (referring to the "unanimous recommendation in the Report of the FAA's Age 60 Aviation Rulemaking Committee" ("ARC") that the legislation be prospective (citing ARC Report to the FAA ("ARC Report") 1 (2006), <u>available at</u> http://www.regulations.gov (search "FAA-2006-26139-5785")), and (3) that a provision providing protection from liability for compliance with the FTEPA is rational in light of the numerous lawsuits that have been filed against unions and carriers based on the Age 60 Rule, <u>id.</u> at 27; <u>see also id.</u> at 24 (referring to the "unanimous recommendation" of the ARC that the legislation include a provision "to protect companies and unions from lawsuits that may arise challenging the prospective nature of the change" (quoting ARC Report 31)).

Equal protection challenges based on age are evaluated under a rational basis test. <u>See</u> <u>Kimel v. Fla. Bd. of Regents</u>, 528 U.S. 62, 83 (2000); <u>Gregory v. Ashcroft</u>, 501 U.S. 452, 470 (1991). Under this standard the government "may discriminate on the basis of age without offending the [Constitution] if the age classification in question is rationally related to a

legitimate state interest." Kimel, 528 U.S. at 83. Age classifications "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." Nguyen v. Immigration & Naturalization Serv., 533 U.S. 53, 77 (2001) (emphasis added) (internal quotation marks omitted). Accordingly, "[t]hose attacking the rationality of the legislative classification have the burden to negative every conceivable basis which might support it." FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 314-15 (1993) (internal quotation marks omitted). And legislative choices are "not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." Id. at 315. Thus, "it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature." Id.

Another member of this Court upheld the constitutionality of the FTEPA's non-retroactivity and compliance protection provisions that were challenged on Fifth Amendment Equal Protection Clause grounds. See Jones v. ALPA, 713 F. Supp. 2d 29, 36 (D.D.C. 2010). In Jones, a former Continental Airlines pilot was forced to retire when he turned sixty several weeks before the FTEPA's enactment. 713 F. Supp. 2d at 33. Applying the rational basis standard of review to the non-retroactivity provision of the FTEPA, Judge Bates determined that Congress could have rationally decided that

> allowing all retired commercial pilots between the ages of sixty and sixty-four to return to their prior positions with full seniority would disrupt the airline pilots' labor hierarchy. . . . Thus, without [the] FTEPA's non[-]retroactivity provision, pilots reentering the labor force would force—or 'bump'—all other employees down the seniority system. Indeed, this influx of labor could even lead to the termination of some junior pilots. It would have been rational for Congress to conclude that this significant bumping would upset current pilots, causing at least some labor disharmony.

Id. at 35.  Moreover, Judge Bates found that the compliance protection provision did not offend the Equal Protection Clause because it "is rational for Congress to seek to minimize conflict between [the] FTEPA and other employment laws.  And it is rational—and wholly consistent with the Constitution—for Congress to provide that acts taken in compliance with federal law cannot support employment discrimination claims under state law."  Id. at 36 (internal citations omitted); see also Avera I, ___ Fed. App'x ___, 2011 WL 3476824, at *4 (applying rational basis review and holding that "[t]he FTEPA complies with the Equal Protection Clause"; reasoning that "the FTEPA's non-retroactivity provision is rationally related to the government's objective of avoiding disharmony and discord in the labor market" and "the FTEPA's protection-for-compliance provision is rational because Congress may legitimately seek to minimize any conflict between the FTEPA and other employment laws").

Unlike the plaintiff in Jones, who had already involuntarily retired at the time of the FTEPA's enactment, the plaintiffs in this case were still employed by United on December 13, 2007.  However, just as Judge Bates in Jones found no equal protection infringement resulting from the failure to apply the FTEPA retroactively to involuntarily retired pilots, 713 F. Supp. 2d at 35, for similar reasons, this Court finds that the same reasoning applies to pilots who remained employed by an airline carrier, but had been placed on inactive pilot status due to their age.  Specifically, the Court can find no justification why the same "rational legislative purpose" for not retroactively applying the statute—namely, limiting the number of over age sixty pilots that could retain their seniority in order to ensure harmony within the labor force—should not also apply to the plaintiffs in this case who, while not fully retired, had been removed from active pilot status and presumably had their flight duties assigned to other pilots.  The fact that there is no legislative history that elucidates Congress's rationale for enacting these provisions does not

mean that there was no reason for their enactment.  See Nordlinger v. Hahn, 505 U.S. 1, 15

(1992) ("[T]he Equal Protection Clause does not demand for purposes of rational-basis review

that a legislature or governing decisionmaker actually articulate at any time the purpose or

rationale supporting its classification.").  In fact, legislative decisions may be based on "rational

speculation unsupported by evidence or empirical data."  Beach Commc'ns, Inc., 508 U.S. at

315.  And, it is the plaintiffs' "burden 'to [negate] every conceivable basis that might support'"

the purpose for the legislation.  Id. at 314-15.  Here, the plaintiffs have failed to meet this burden.

A line had to be drawn somewhere as to who would be permitted to continue their employment

with seniority following the change brought about by the enactment of the FTEPA.  Likewise,

there is also no reason why the legislative purpose for adopting the compliance protection

provision identified in Jones should not apply in this case—assurance that acts taken in

compliance with the FTEPA "cannot support employment discrimination" suits and the creation

of "defenses or immunities" when such suits are pursued.  Jones, 713 F. Supp. 2d at 36-37.

Accordingly, the Court finds that both the non-retroactivity and compliance protection provisions

of the FTEPA survive rational basis review.[16]

> 2. The Fifth Amendment Due Process Challenge

The plaintiffs next contend that the FTEPA does not afford them procedural due process

because it constitutes a property taking of their seniority rights and salary without judicial

review.  Pls.' ALPA Opp'n at 15, 33 n.18.  The defendants, on the other hand, argue that the

FTEPA complies with the Due Process Clause of the Fifth Amendment because the statute is not

"arbitrary and irrational" in light of the ARC Report's recommendations that the legislation be

---

[16]  Although the plaintiffs object to the ALPA's discussion of the ARC Report, which purportedly supported the two provisions of the FTEPA at issue here, see Pls.' ALPA Opp'n at 35, 37, the Court has not considered this report in deciding the equal protection challenge.

prospective and contain a provision limiting the liability of carriers and unions. ALPA Def.'s Mem. at 23-24. The defendants also allege that the plaintiffs do not have any constitutionally protected interest, specifically liberty or property interests, that would "trigger[] the hearing requirements mandated for procedural due process" because based on the Age 60 Rule, which had been in effect for almost fifty years, the plaintiffs could only have expected to work until their sixtieth birthdays. Id. The defendants therefore argue that the plaintiffs "had no legitimate claim to continued work as pilots at any Part 121 air carrier, and certainly no claim to work as pilots at United Airlines . . . [with] the seniority they previously possessed." Id. at 25-26.

As with the equal protection challenge, this Court in Jones also upheld the constitutionality of the FTEPA's non-retroactivity and compliance protection provisions under the Fifth Amendment's Due Process Clause. See Jones, 713 F. Supp. 2d at 36-37. In Jones, Judge Bates held that "[e]ven assuming that [the] FTEPA's non[-]retroactivity provision takes away from [the plaintiff] a protected property interest in contractual seniority rights, '[i]t is well established that statutes or ordinances of general applicability may condition or even prohibit the right to conduct a business without running afoul of procedural due process.'" Id. at 36 (quoting Vaden v. Maywood, 809 F.2d 361, 364 (7th Cir. 1987)); accord Minn. State Bd. for Cmty. Colls. v. Knight, 465 U.S. 271, 284 (1984) ("General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard. Their rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule." (internal quotation marks omitted)). The Court finds no reason to depart from Jones. The plaintiffs here, like the plaintiff in Jones, were denied retroactive application of the FTEPA, which limited them to applying for new hire positions with the loss of seniority rights and pay. See Jones, 713 F. Supp.

2d at 36-37.  As Judge Bates found in <u>Jones</u>, "the non[-]retroactivity provision's passage by Congress affords [the plaintiffs] all the process" required by the Constitution.  <u>Id.</u> at 37.

Judge Bates therefore held in <u>Jones</u> that the compliance protection provision did not offend procedural due process because,

> [a]lthough individuals do have a protected property interest in legal causes of action, such as those for age discrimination, the State remains free to create substantive defenses or immunities for use in adjudication—or to eliminate its statutorily created causes of action altogether. . . .  In each case, the legislative determination provides all the process that is due.

<u>Id.</u> (internal quotation marks and citations omitted).  The Eleventh Circuit reached a similar conclusion in <u>Avera</u>.  <u>See</u> <u>Avera I</u>, ___ Fed. App'x ___, 2011 WL 3476824, at *5 ("Avera's procedural due process challenge . . . fails.  Even assuming that the FTEPA revoked Avera's property interest in his seniority at United Airlines (which interest Avera no longer had because he was terminated in accord with the Age 60 Rule and no longer had any expectation of future employment as a commercial pilot), Congress acted rationally and within its power by enacting the FTEPA and therefore Avera's rights were protected only by his power, immediate or remote, over those who make the rule." (internal quotation marks and citation omitted)).  Viewing the foregoing authority as persuasive, the Court finds that the the FTEPA's compliance protection provision does not violate the plaintiffs' procedural due process rights.[17]

---

[17] It is unclear whether the plaintiffs are also asserting that the FTEPA violates their substantive due process rights. In any case, a substantive due process claim receives the same rational basis review as an equal protection challenge. <u>Usery v. Turner Elkhorn Mining Co.</u>, 428 U.S. 1, 15 (1976) ("It is by now well established that legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way."). Thus, for the same reasons that they do not violate equal protection, the FTEPA's non-retroactivity and compliance protection provisions do not violate the plaintiffs' substantive due process rights. <u>See</u> <u>Avera I</u>, ___ Fed. App'x ___, 2011 WL 3476824, at *5 (rejecting substantive due process challenge to the FTEPA).

3.      The Bill of Attainder Challenge

Bills of attainder are "legislative acts, no matter what their form, that apply either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial." United States v. Lovett, 328 U.S. 303, 315-16 (1946).  Thus, a law is prohibited under the bill of attainder clause "if it (1) applies with specificity, and (2) imposes punishment."  BellSouth Corp. v. F.C.C., 162 F.3d 678, 683 (D.C. Cir. 1998).

The plaintiffs' final constitutional challenge is that denying application of exception (A) to the non-retroactivity provision of the FTEPA to them amounts to a bill of attainder because the FTEPA targets "a very small definable group of plaintiff pilots who turned 60 between December 1 and December 12, 2007," Am. Compl. ¶ 96, and forced their retirement or continued employment with loss of seniority and reduced pay, which is a "historic form of Bill of Attainder punishment," Pls.' ALPA Opp'n at 32, 34.  More specifically, the plaintiffs claim that the FTEPA constitutes a barrier to employment in the passenger airline pilot profession, id. at 34, and that "economic punishment was the purpose of the statute" because "[t]here is no legislative history . . . justifying the harm imposed" on them, id. at 34-36.  The defendants argue, on the other hand, that the FTEPA does not apply to the plaintiffs with "specificity," ALPA Def.'s Mem. at 28, that "[t]he [p]laintiffs confuse the 'specificity' prong of [the bill of attainder] test . . . with the number of plaintiffs joining in a challenge to [a statute]," ALPA Def.'s Reply at 17, and that "[t]he challenged provisions of [the] FTEPA do not inflict 'punishment' on anyone, including the [p]laintiffs," ALPA Def.'s Mem. at 27, but rather expand the employment options of those pilots over age sixty, ALPA Def.'s Reply at 18, 20.  For several reasons, the plaintiffs' bill of attainder challenge fails.

First, the FTEPA does not apply to the plaintiffs with specificity. See Weiland, 2011 WL 925408, at *7 ("The FTEPA did not single out an ascertainable person or group of persons for adverse treatment."); cf. Foretich v. United States, 351 F.3d 1198, 1217 (D.C. Cir. 2003) (holding that the Elizabeth Morgan Act satisfied the specificity requirement because "[a]lthough Congress stopped short of including the names "Foretich" and "Morgan" in the text of the statute, the applicability of the Act depends on such a narrow set of circumstances that it applies to no known cases other than the Morgan-Foretich custody dispute").

Second, even assuming that the FTEPA "applies with specificity," it does not impose any punishment. To determine whether a statute imposes punishment, the Court must examine "(1) whether the challenged statute falls within the historical meaning of legislative punishment; (2) whether the statute, viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes; and (3) whether the legislative record evinces a congressional intent to punish." Foretich, 351 F.3d at 1218 (internal quotation marks omitted) (quoting Selective Serv. Sys. v. Minn. Pub. Interest Research Group, 468 U.S. 841, 852 (1984)). "The [Supreme] Court has applied each of these criteria as an independent—though not necessarily decisive—indicator of punitiveness." Id.

Judge Bates in Jones also addressed this precise issue, and held that neither the non-retroactivity provision nor the compliance protection provision "inflict the sort of burdens historically associated with punishment." Jones, 713 F. Supp. 2d at 38 (internal quotations omitted). As he stated:

> Although legislative bars to participation by individuals or groups in specific employments or professions may constitute punishment, [the] FTEPA's non[-]retroactivity provision does not bar [the plaintiffs] from working as a commercial airline pilot. Rather, it simply regulates the circumstances under which [the plaintiffs] may engage in such work. And while a denial of access to the

> courts, or prohibiting a party from bringing an action, has been defined as punishment, [the] FTEPA's protection for compliance provision does not, by merely narrowing the scope of statutory causes of action, deny [the plaintiffs] access to the courts. Both provisions may harm [the plaintiffs'] interests, but [f]orbidden legislative punishment is not involved merely because the [FTEPA] imposes burdensome consequences.

Id. (internal quotation marks and citations omitted); see also Avera I, ___ Fed. App'x ___, 2011 WL 3476824, at *6 (utilizing similar reasoning and concluding that "the FTEPA is not a bill of attainder"). The reasoning from Jones applies with equal force in this case.

Furthermore, several courts have held that, rather than punish, the FTEPA conferred a benefit on pilots who had already reached or were approaching age sixty. See Avera v. United Air Lines ("Avera II"), 686 F. Supp. 2d 1262, 1276 (N.D. Fla. 2010) ("The intent of the statute . . . is to . . . increase the upper permissible age for pilots. The FTEPA is a benefit and not a punishment." (emphasis in original)); id. ("The non-retroactivity clause of the FTEPA also works to the benefit of those pilots who had already reached the age of 60 prior to enactment, by enabling them to resume flying until age 65."); Weiland, 2011 WL 925408, at *7 ("[The FTEPA] conferred additional rights on a particular group of individuals—pilots who would reach age 60 after its enactment—in the form of eligibility for continued employment as pilots."). Although the plaintiffs were not among those that benefited from the FTEPA's enactment through continued employment with seniority because they turned sixty prior to the statute's enactment, "the failure to fall into a group of persons who benefit economically from an enactment is not 'within the historical meaning of legislative punishment.'" Weiland, 2011 WL 925408, at *7 (quoting Selective Serv. Sys., 468 U.S. at 852); see also Avera II, 686 F. Supp. 2d at 1276 (stating that the FTEPA provided that those pilots who reached age sixty prior to its enactment

could resume flying until age sixty-five, but that they "could not bump the seniority status of those pilots currently flying . . . [and] that policy decision is not a punishment").

Moreover, as the Court previously discussed, each of the challenged provisions further non-punitive and rational legislative purposes, and there is no indication that it was Congress's intent to punish commercial pilots who were between the ages of sixty and sixty-four at the time of the FTEPA's passage. See Jones, 713 F. Supp. 2d at 38 (noting that the FTEPA's legislative record does not evidence a congressional intent to punish); Avera II, 686 F. Supp. 2d at 1276 ("The intent of the statute . . . is to protect the public and to increase the upper permissible age for pilots."); Weiland, 2011 WL 925408, at *7 (explaining that the title of the Act itself indicates a clear congressional intent to "remedy what it believed was unfair treatment of experienced pilots," which is a non-punitive purpose). Thus, the FTEPA "does not inflict punishment on [the plaintiffs] nor does it determine guilt." Avera II, 686 F. Supp. 2d at 1276.

Accordingly, the FTEPA does not constitute an unlawful bill of attainder.[18]

## C. The Plaintiffs' ADEA Claim

The ALPA argues that the ADEA claim asserted against it (Count 2 of the complaint) must be dismissed because the plaintiffs "failed to exhaust the statutorily-prescribed administrative remedies," ALPA Def.'s Mem. at 12-13, and have failed to state a valid claim for age discrimination under the ADEA, id. at 13-14. The plaintiffs, however, contend that plaintiff George Emory's "EEOC charge of [the] ALPA's pattern of age discrimination . . . properly exhausted administrative remedies for all similarly situated plaintiff pilots," Pls.' ALPA Opp'n at

---

[18] The plaintiffs also argue that the FTEPA's provisions are severable, such that those provisions deemed unconstitutional may be stricken from the statute without altering the remainder of the constitutional provisions. Pls.' ALPA Opp'n at 15 & n.9, 30-31. For example, the plaintiffs contend that even if the non-retroactivity provision is constitutional, the allegedly unconstitutional compliance protection provision should be stricken because it is severable, like a private right of action provision. Pls.' ALPA Opp'n at 15 & n.9. However, because the Court has deemed both of the FTEPA's statutory provisions at issue to be constitutional, the Court need not address this argument.

9; see also id. at 9-13, and that they have adequately pleaded age discrimination under the ADEA, see id. at 3-4 (arguing that the bona fide occupational qualification defense ceased to exist when the Age 60 Rule was extinguished); id. at 9.

In support of its separate motion for summary judgment, United asserts that the ADEA claim against it (Count 1 of the complaint) fails because plaintiffs Hayes and Lanier failed to exhaust their administrative remedies under the ADEA, United Def.'s Mem. at 10-12, and the age discrimination claim against United is "without merit under a half-century of age-60 case law," id. at 12-16, the FTEPA's compliance protection provision, id. at 16, United Def.'s Opp'n at 15-16, and also the FTEPA's non-retroactivity provision, United Def.'s Mem. at 16-21; United Def.'s Opp'n at 4-15.

In their cross-motion for partial summary judgment against United, however, the plaintiffs not only request judgment in their favor against United on their ADEA claim, but also request a finding that United's conduct was a "willful ADEA violation[]" that amounted to a "reckless and intentional disregard of the law," which entitles the plaintiffs to recover "'liquidated' or double damages." Pls.' Mem. at 3 (internal quotations omitted). More specifically, the plaintiffs argue that United's disregard of the plain meaning rule of statutory construction and "[f]ailure to [a]pply . . . [e]xception (A) to [the n]on-[r]etroactivity [provision] of the FTEPA" to the plaintiffs, id. at 7-17, constituted a reckless disregard of the law, id. at 18-35, 38-40, that this Court's decision in Carswell v. ALPA, 540 F. Supp. 2d 107 (D.D.C. 2008), supports the plaintiffs' allegation that an "employer's disparate treatment of these still-employed and still-qualified December pilots was illegal age discrimination reflecting reckless disregard for the law," id. at 35-38, and that plaintiffs Hayes and Lanier satisfied the administrative exhaustion requirements through the submissions made by other similarly-situated plaintiffs who

filed timely EEOC charges, id. at 40-44; Pls.' United Opp'n at 27-33.  United counters all of these arguments, repeating its prior arguments and additionally alleging that the plaintiffs have misconstrued the "single-filer rule," United Def.'s Reply at 10-12, and that the plaintiffs have failed to demonstrate that United's interpretation of the FTEPA amounted to intentional age discrimination, United Def.'s Opp'n at 16-26.

1.    Exhaustion of Administrative Remedies

Before bringing suit in federal court, ADEA plaintiffs must exhaust their administrative remedies by filing an EEOC charge and giving the EEOC the opportunity to act on it.  29 U.S.C. § 626(d)(1) (2006) ("No civil action may be commenced by an individual under [§ 626] until 60 days after a charge alleging unlawful discrimination has been filed with the [EEOC]."); Washington v. Washington Metro. Area Transit Auth., 160 F.3d 750, 752 (D.C. Cir. 1998).  The ALPA contends that all of the plaintiffs have failed to exhaust their administrative remedies with respect to the ALPA, ALPA Def.'s Mem. at 12-13, while United alleges that plaintiffs Lanier and Hayes have not satisfied this administrative filing requirement as to United, United Def.'s Mem. at 10-12.  The Court will address each defendant's arguments in turn.

a.    The plaintiffs' ADEA claim against the ALPA

The ALPA argues that none of the plaintiffs have exhausted their administrative remedies against it because "[n]one of the [p]laintiffs has filed the required charges against [the] ALPA related to the application of [the] FTEPA."  ALPA Def.'s Mem. at 12.  Specifically, the ALPA contends that because plaintiff Emory's March 17, 2007, administrative charge against it "objects only to [the] ALPA's prior support for the Age 60 Rule—specifically in the form of lobbying . . . [and] makes no mention of [the] FTEPA . . . [,] that charge cannot fulfill the exhaustion requirement" as to plaintiff Emory.  Id.  In addition, the ALPA asserts that because

Emory's EEOC charge against it does not satisfy the administrative filing requirements of the ADEA, the seven remaining plaintiffs who did not file charges against the ALPA also failed to exhaust their administrative remedies because they cannot "piggyback" on Emory's charge.[19] Id. at 13.  For the reasons that follow, the Court agrees with the ALPA.

"A vague or circumscribed EEOC charge will not satisfy the exhaustion requirement for claims it does not fairly embrace."  Marshall v. Federal Exp. Corp., 130 F.3d 1095, 1098 (D.C. Cir. 1997).  Thus, an ADEA lawsuit is limited in scope to claims that are "like or reasonably related to the allegations [in] the [EEOC] charge."  Cheek v. Western and Southern Life Ins. Co., 31 F.3d 497, 500 (7th Cir.1994) (internal quotation marks omitted).  "[T]he critical question is whether the claims set forth in the civil complaint come within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."  Howard v. Gutierrez, 571 F. Supp. 2d 145, 157 (D.D.C. 2008) (quoting White v. New Hampshire Dep't of Corrs., 221 F.3d 254, 263 (1st Cir. 2000)).  Consequently, there must be a factual relationship between the claims asserted in the judicial complaint and the claims alleged in the EEOC charge.  Peters v. Renaissance Hotel Operating Co., 307 F.3d 535, 550 (7th Cir. 2002).  "This means that the EEOC charge and the complaint must, at minimum, describe the same conduct and implicate the same individuals."  Id. (internal quotation marks omitted) (emphasis in original) (quoting Harper v. Godfrey Co., 45 F.3d 143, 148 (7th Cir. 1995)).  Furthermore, a plaintiff alleging discrimination must file an EEOC charge for each discrete act of discrimination.  Hamilton v. Geithner, 743 F. Supp. 2d 1, 9 (D.D.C. 2010).  Discrete acts in the

---

[19]  One of this Court's colleagues has recognized a single-filing exception to the ADEA's general requirement that all age discrimination claims first be filed with the EEOC, see Coghlan v. Peters, 555 F. Supp. 2d 187, 201 (D.D.C. 2008); see also Brooks v. Dist. Hosp. Partners, L.P, 606 F.3d 800, 807 (D.C. Cir. 2010) (recognizing the exception in the Title VII context), and this Court sees no reason to take a different position.  The exception permits non-filing parties to join the suit of another similarly situated plaintiff who did file an administrative complaint against the same defendant by "piggybacking" on the filing-plaintiff's EEOC charge.  See Coghlan, 555 F. Supp. 2d at 201.

employment context are "individual acts that occur at a fixed time," such as "termination, failure to promote, denial of transfer, [and] refusal to hire."  Camp v. District of Columbia, No. Civ.A. 04-234(CKK), 2006 WL 667956, at *7 (D.D.C. Mar. 14, 2006) (internal quotation marks omitted) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002)). Accordingly, a plaintiff may not rely on the relationship between a discrete claim and any other claim to satisfy the administrative exhaustion requirement, but rather must "exhaust the administrative process" as to each claim, regardless of such a relationship.  Id. (internal quotation marks omitted).  With these principles in mind, the Court must therefore determine whether the claims alleged in the complaint in this case are reasonably related to the allegations set forth in Emory's 2007 pre-FTEPA EEOC charge, and, if so, whether the remaining seven plaintiffs may "piggyback" on Emory's EEOC charge against the ALPA for the purpose of exhausting their own administrative remedies.

The Court finds Park v. Howard University, 71 F.3d 904, 907 (D.C. Cir. 1995), instructive in answering these questions.  In Park, the Circuit rejected a plaintiff's Title VII hostile work environment claim because the plaintiff's EEOC charge only alleged and set out facts supporting charges of discrimination based on sex and national origin.  Id. at 908 ("Park's charge not only lacks the words 'hostile work environment,' but also lacks any factual allegations supporting such a claim.").  Here, the ALPA correctly points out that George Emory's March 2007 EEOC charge against the ALPA only gave the defendants notice of his challenge to the Age 60 Rule.  Emory's March 2007 EEOC charge against the ALPA alleged a "continuing action" for the ALPA's support of the Age 60 Rule, ALPA Def.'s Mem., Ex. 1 (Emory March 11, 2007 EEOC charge against the ALPA), and for actively "lobbying against a change in the [A]ge 60 [R]ule," Pls.' Supp. ALPA Opp'n, Ex. 1 (Emory January 22, 2007 EEOC

Intake Questionnaire).[20] The complaint in this case, on the other hand, alleges that the ALPA

"discriminated against union members solely because of age" by (1) "limit[ing,] segregat[ing,]

[and] refus[ing] to refer or sponsor these plaintiff union members for employment and continued

employment to the employer; . . . [thus] depriv[ing] . . . these plaintiffs [of] compensation and

salary because of age," Am. Compl. ¶ 70; (2) "causing[,] attempting to cause[,] and colluding

with employer United, to discriminate against these plaintiff union members because of age . . .

," id.; and (3) "continuing to promote and advance its . . . [allegedly incorrect] interpretation[] of

. . . exception (A) to non-retroactivity in the FTEPA and . . . its . . . interpretation of the term

'required [f]light deck crew member,'" id. ¶ 71. Just as in Park, where the plaintiff made no

mention of a hostile work environment or any underlying facts supporting such a claim, here,

Emory's charge never mentions the FTEPA and a possible change in the law, or set forth any

facts indicating that he would be discriminated against under the ALPA's interpretation of the

FTEPA. Nor do the events leading to the current claims (the ALPA's refusal to refer union

members for continued employment with United after their sixtieth birthdate, see id. ¶ 70, the

ALPA's alleged collusion with United, see id., and the ALPA's promoting an allegedly incorrect

interpretation of the FTEPA, see id. ¶ 71) share any factual similarity with the event leading to

the EEOC charge made against the ALPA (the ALPA's support for the Age 60 Rule and

lobbying against a change of the rule). These are simply four discrete, separate events, with little

in common other than the fact that they all resulted in the mandatory retirement of the plaintiffs,

and are alleged violations of the ADEA. See Camp, 2006 WL 667956, at *7 (internal quotation

---

[20] The Supreme Court has noted that although an EEOC Intake Questionnaire itself is merely aimed at "facilitate[ing] 'pre-charge filing counseling,'" Fed. Express Corp. v. Holowecki, 552 U.S. 389, 405 (2008), it may be deemed a charge for purposes of the filing requirements in the ADEA if it can be "reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee," id. at 402. In this case, however, even if the Court considers the allegations in Emory's ALPA Intake Questionnaire as part of his EEOC charge, Emory nevertheless failed to exhaust his administrative remedies as to the ADEA claim asserted in this case.

marks omitted) (quoting <u>Morgan</u>, 536 U.S. at 114) (stating that discrete acts are "individual acts that occur at a fixed time," such as "termination, failure to promote, denial of transfer, [and] refusal to hire").  As such, Emory had to directly exhaust the administrative remedies as to each claim, and he is barred from relying on the relationship between these claims and the claims alleged in his EEOC charge to satisfy the administrative exhaustion requirements.  <u>Id.</u>; <u>see also</u> <u>Hamilton</u>, 743 F. Supp. 2d at 9.

The plaintiffs' reliance on <u>Schuler v. PriceWaterhouseCoopers, LLC</u>, 514 F. 3d 1365 (D.C. Cir. 2008), is misplaced.  <u>Schuler</u> involved a PriceWaterhouseCoopers ("PwC") employee who made a series of complaints against the firm's allegedly discriminatory partnership promotion policy.  This Circuit declined to decide whether the plaintiff was required to file an additional EEOC charge for each annual non-promotion because the plaintiff sought "damages flowing from the first application of PwC's . . . policy through to the present" and not separate, "discrete nonpromotion charges."  <u>Id.</u> at 1379-80.  Unlike <u>Schuler</u>, however, which involved PwC's identical and continuous partnership promotion policy, Emory's administrative charge refers only to damages resulting from the Age 60 Rule, while the complaint seeks damages from the separate and discrete FTEPA policy.  As a result, Emory was required to file a separate EEOC charge challenging the FTEPA policy in order to exhaust his administrative remedies as to this claim.  Having failed to do so, the Court must dismiss Emory's ADEA claim against the ALPA.  And because the allegations in the complaint do not fall within the scope of Emory's March 2007 EEOC charge, the remaining plaintiffs may not "piggyback" on Emory's charge to satisfy their own administrative exhaustion requirements.  Therefore, none of the plaintiffs have exhausted their administrative remedies in regards to their ADEA claim against the ALPA.

b.      Plaintiffs Hayes' and Lanier's ADEA claim against United

United argues that plaintiffs Hayes and Lanier, each of whom did not file an EEOC

charge against United, failed to exhaust their administrative remedies as to United because none

of the plaintiffs' 2008 EEOC charges asserted claims of discrimination on behalf of others

similarly situated or alleged class-wide discrimination.  United Def.'s Mem. at 11.  Moreover,

United alleges that the administrative charges filed against it "reflect[] individual allegations of

age discrimination and seek personal relief."  Id. (emphasis added).  Thus, United contends that

Hayes and Lanier may not rely on the single-filing rule to piggyback on the other plaintiffs' 2008

EEOC charges.  Id.[21]

As previously stated, "[a] vague or circumscribed EEOC charge will not satisfy the

exhaustion requirement for claims it does not fairly embrace."  Marshall, 130 F.3d at 1098.

Therefore, the Court must first determine whether the 2008 EEOC charges against United are

reasonably related to the claims asserted in this case.  The six 2008 EEOC charges against

United each state the date on which the respective plaintiff began working for United, that their

most recent position was as a pilot, that they were discharged on January 1, 2008, and that "I

believe I have been discriminated against because of my age, 60 . . . in violation of the [ADEA]."

United Def.'s Mem., App. B (EEOC charges of six plaintiffs).  And the plaintiffs' claims against

United in their complaint in this case are that United "knew or should have known" that its

--------

[21]  For the same reasons Emory's March 2007 EEOC charge against the ALPA failed to exhaust his administrative
remedies against the ALPA, his July 2007 pre-FTEPA EEOC charge also failed to exhaust his administrative
remedies as to United.  Although Emory's July 2007 administrative charge against United clearly alleges that he is a
member of a class of plaintiffs, the charge was based solely on the Age 60 Rule, the failure to support a change of
the international standard mandatory retirement age of sixty-five, and United's denial of Emory's leave of absence
request.  United Def.'s Mem., App. C (Emory's July 1, 2007 EEOC charge).  The plaintiffs' current claims against
United, on the other hand, are that it "knew or should have known" that its interpretation of the FTEPA was
incorrect and that the plaintiffs "clearly met the exception" to non-retroactivity of the FTEPA.  Am. Compl. ¶ 67.
Thus, the claims alleged against United in this case are not reasonably related to the allegations set forth in Emory's
2007 pre-FTEPA EEOC charge.  Therefore, plaintiffs Hayes and Lanier may not use the piggyback doctrine as the
basis for satisfying their exhaustion requirements.

interpretation of the FTEPA was incorrect and that the plaintiffs "clearly met the exception" to non-retroactivity of the FTEPA. Am. Compl. ¶ 67. Although the plaintiffs' administrative charges never mention the FTEPA, the EEOC's investigation regarding the allegedly discriminatory discharge of these airline pilots attaining age sixty could reasonably have been expected to uncover and examine the Age 60 Rule and how it was impacted by the FTEPA. See Howard, 571 F. Supp. 2d at 157. Consequently, there is a factual relationship between the claims asserted in the complaint and those alleged in the 2008 EEOC charges. See Peters, 307 F.3d at 550.

Next, the Court must address whether plaintiffs Hayes and Lanier may piggyback on the other plaintiffs 2008 EEOC charges. Application of the piggyback rule is permitted by the District of Columbia Circuit in non-class action cases so long as the plaintiffs who did not file EEOC charges have filed complaints similar to those filed by plaintiffs who filed an EEOC charge. Foster v. Gueory, 655 F.2d 1319, 1322 (D.C. Cir. 1981) ("[T]he critical factor in determining whether an individual Title VII plaintiff must file an EEOC charge, or whether he may escape this requirement by joining with another plaintiff who has filed such a charge, is the similarity of the two plaintiffs' complaints."); see also Brooks v. Dist. Hosp. Partners, L.P., 606 F.3d 800, 807 (D.C. Cir. 2010) (same). The District of Columbia Circuit has held that where two plaintiffs allege that they were similarly situated and were subjected to the same discriminatory treatment, the purposes of the exhaustion requirement are adequately served if one plaintiff has filed an EEOC charge. Foster, 655 F.2d at 1322. In other words, so long as the "claims are so similar that it can fairly be said that no conciliatory purpose would be served by filing separate EEOC charges, then it would be 'wasteful, if not vain,' . . . to require separate EEOC filings." Id. (citation omitted).

In this case, Hayes' and Lanier's claims replicate the filing-plaintiffs' claims, which seek relief from the same policy the filing-plaintiffs allege discriminates on the basis of age. Furthermore, Hayes and Lanier were similarly situated to the filing-plaintiffs as United pilots who were involuntarily retired on the same date because they had attained the age of sixty. Requiring Hayes and Lanier to file separate EEOC charges "would have been redundant" and would have served no meaningful purpose. Brooks, 606 F.3d at 807. Finally, contrary to the defendant's contention, a filing-plaintiff's EEOC charge need not allege class-wide discrimination unless the suit is a class action. See id. at 803-07 (applying the "single filing" exception where only individual actions remained following the denial of class certification); Foster, 655 F.2d at 1322-23 (same). Thus, plaintiffs Hayes and Lanier may avail themselves of the single-filing exception by piggybacking on the six filing-plaintiffs' 2008 EEOC charges against United.

> 2.  The Merits of the Plaintiffs' ADEA Claim Against United

As the basis for their ADEA claim against United, the plaintiffs allege that United "acted in direct and willful violation of the ADEA when it knew or should have known the applicable law in this matter contrived its unlawful interpretation of the [FTEPA] solely to shoe horn this situation into the no longer effective Age 60 Rule when the plaintiffs clearly met the exception." Am. Compl. ¶ 67. United argues that this Court's decision in Carswell and the FTEPA require that summary judgment be awarded in its favor on the plaintiffs' ADEA claim. Specifically, United alleges that (1) the plaintiffs were subject to the Age 60 Rule's mandatory retirement requirement because the plaintiffs did not qualify for an exception to the non-retroactivity provision of the FTEPA, United Def.'s Mem. at 16-21; United Def.'s Opp'n at 4-15, (2) its mandatorily prescribed actions in accordance with the Age 60 Rule were not in contravention of

the ADEA because this Court in <u>Carswell</u> determined that the Age 60 Rule constituted a bona fide occupational qualification under the ADEA, United Def.'s Mem. at 12-15, and (3) the FTEPA's compliance protection provision mandates that United be "absolve[d] . . . from any liability . . . alleged to result from [United's] compliance with the Age 60 Rule prior to December 13, 2007," <u>id.</u> at 16; United Def.'s Opp'n at 15-16.  The plaintiffs contend, however, that the impact of <u>Carswell</u> is diminished because, unlike the plaintiffs in this case, the Age 60 Rule, and not the FTEPA, applied to the plaintiff in <u>Carswell</u> and the plaintiff there could not allege that he had been rejected for a position due to his age because he had not alleged that he had applied for other positions with the airline.  Pls.' Mem. at 36.[22]  The plaintiffs go even further by arguing that <u>Carswell</u> actually <u>supports</u> their ADEA claim against United because the court in <u>Carswell</u> "predict[ed] . . . that where pilots pleaded, as the December . . . p[i]lots allege[] here, that they were passed over for pilot positions [they were qualified for] on account of age alone, a valid cause of action under the ADEA would be stated."  Pls.' Mem. at 37.  Moreover, the plaintiffs assert that United cannot rely on the compliance protection provision of the FTEPA because United did not act in conformance with the FTEPA when it allegedly misinterpreted exception (A) to the non-retroactivity provision of the FTEPA as being inapplicable to the plaintiffs, Pls.' United Opp'n at 17-18; Pls.' Mem. at 6, and United's actions taken in accordance with the Age 60 Rule are purportedly not at issue in this case, Pls.' Mem. at 6; Pls.' Reply at 24. For the reasons that follow, the Court agrees with United.

The ADEA makes it unlawful for an employer to discharge or discriminate against an individual "because of such individual's age."  29 U.S.C. § 623(a)(1).  In order to state a valid discrimination claim under the ADEA, the plaintiffs must "establish a prima facie case of

---

[22]  The Court notes that it is unclear whether the plaintiffs are also making an ADEA claim based on United's failure to transfer them to different positions or hire them as "new hire" pilots.

discrimination" in the absence of direct evidence of discrimination, <u>Reeves v. Sanderson Plumbing Prods.</u>, 530 U.S. 133, 142 (2000), after which "the burden shifts to the defendant, who must 'articulate some legitimate, non-discriminatory reason' for the adverse action," <u>Czekalski v. Peters</u>, 475 F.3d 360, 363 (D.C. Cir. 2007) (quoting <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973)). The plaintiffs must then show that the reason provided by the defendant "is merely a pretext for discrimination." <u>Hovanas v. American Eagle Airlines, Inc.</u>, No. 3:09-cv-0209-B, 2010 WL 1993726, at *4 (N.D. Tex. May 18, 2010). However, the ADEA further states that "[i]t shall <u>not</u> be unlawful for any employer" to "take action otherwise prohibited under subsection[] (a) . . . of this section where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business." 29 U.S.C. § 623(f)(1) (emphasis added).

To make out a claim for wrongful discharge in the ADEA context, the plaintiffs must "show that [they] belong[] in the statutorily protected age group, [they were] qualified for the position, [they were] terminated, and [they were] disadvantaged in favor of a younger person." <u>Carswell</u>, 540 F. Supp. 2d at 115. Because the Court has determined that the Age 60 Rule, and not the FTEPA, applies to the plaintiffs in this case, United's refusal to retroactively apply the FTEPA to the plaintiffs so that they could remain employed as pilots in part 121 operations without losing their seniority cannot be a basis for their ADEA claim.[23] Furthermore, although it is clear that the plaintiffs have alleged a prima facie case of age discrimination as a result of their

---

[23] Similarly, the Court in <u>Carswell</u> only surmised that a valid ADEA claim would have been asserted if the plaintiff had applied for another job for which he was qualified but denied due to age, <u>see</u> <u>Carswell</u>, 540 F. Supp. 2d at 117 ("The Court would be inclined to agree with the plaintiff . . . if he had applied for <u>another</u> job for which he was qualified but was denied the position because of his age." (emphasis added)), but the basis for the plaintiffs' ADEA claim in this case is that they were qualified under exception (A) to the non-retroactivity provision of the FTEPA to continue their employment as pilots in Part 121 operations with their prior seniority. Because the Court has determined that the plaintiffs were not qualified under exception (A), <u>Carswell</u> does not support the plaintiffs' position.

discharge, this Court in Carswell held that an employer's compliance with a statutory requirement, specifically the Age 60 Rule, cannot be the basis for an ADEA claim, even if compliance amounts to prima facie proof of discrimination because the Age 60 Rule is a bona fide occupational qualification. See Carswell, 540 F. Supp. 2d at 115-16 (holding that although U.S. Airways conceded that its mandatory retirement policy which followed the Age 60 Rule constituted direct evidence of age discrimination, the retirement policy qualified as a bona fide occupational qualification defense because it tracked the Age 60 Rule, which was a binding federal regulation). Finally, as previously noted, the FTEPA specifically provides that an employer's compliance with the Age 60 Rule or the FTEPA cannot be the basis for an ADEA claim. See supra Part III. A.3. Because the Court has determined that United's application of the Age 60 Rule to remove the plaintiffs from active flight status and application of the FTEPA to bar the plaintiffs from continued piloting with their prior seniority were actions in conformance with the Age 60 Rule and the FTEPA, the plaintiffs have failed to state a valid ADEA claim based on their discharge under the Age 60 Rule. See id.; see also Weiland, 2011 WL 925408, at *4-*5 (holding that an airline's refusal to schedule the plaintiff for work as of his sixtieth birthday and changing his status to inactive two days before the FTEPA's enactment, were in conformance with the Age 60 Rule "in effect on their sixtieth birthday, and the enactment of the FTEPA provided [them] with no additional rights or remedies").

In addition, although it is unclear whether the plaintiffs are also making an ADEA claim based on United's failure to transfer the plaintiffs to a different position or hire them as "new hire" pilots, the Court finds that if such claims are being asserted they also fail. In order to assert a claim for failure to hire or promote to a different position under the ADEA, the plaintiffs must demonstrate (1) that they belong to the protected class, (2) that they applied and were qualified

for "a job for which the employer was seeking applicants," (3) that they were rejected despite being qualified, and (4) that, after their rejection, "the employer continued to seek applicants with similar qualifications for the position for which the plaintiff[s] applied." Murnane v. American Airlines, Inc., 482 F. Supp. 135, 142 (D.D.C. 1979). As previously noted, none of the plaintiffs sought a transfer to a non-pilot position within United prior to their sixtieth birthday. See supra note 4; see also United's SOF ¶¶ 12-13; Pls.' Disputed SOF ¶ 4.[24] In addition, while all of the plaintiffs requested to continue their employment as pilots under exception (A) of the FTEPA, Am. Compl. ¶¶ 50-56, only George Emory, Larry Voll, and John Bennett requested, and Voll actually applied on Skynet for, a "new hire" pilot position with United pursuant to exception (B), id. ¶¶ 51(f), 53(d); Pls. Mem., Bennett Decl. at 2. These "new hire" pilot applicants, however, have not alleged that United was actually seeking applicants for pilot positions nor that United continued to seek applicants with similar qualifications for these pilot positions following their rejection. In fact, there is evidence indicating that United was not hiring pilots. For example, Dean May was told in December 2007 by the Chief Pilot at Chicago Flight Operations that "United was not hiring any pilots at that time." Pls.' Mem., May Decl. at 2. And May's indications that there was news coverage of a United pilot shortage causing flights to be cancelled does not in itself demonstrate that United was hiring pilots. See id. Therefore, the plaintiffs have not asserted a prima facie case of age discrimination based on the failure of United to hire the plaintiffs as "new hire" pilots under exception (B) to the non-retroactivity provision of the FTEPA. Because the plaintiffs have failed to state a valid claim under the ADEA, United is entitled to judgment as a matter of law on this claim. Accordingly, United's

---

[24] As previously stated, this fact is not in genuine dispute. See supra note 5.

motion for summary judgment is granted as to Count 1 of the complaint and the plaintiffs' motion for partial summary judgment is denied.[25]

D.    The Plaintiffs' Breach of the Duty of Fair Representation Claim

The ALPA alleges that the plaintiffs have failed to adequately state a claim for breach of the duty of fair representation, ALPA Def.'s Mem. at 18-20, and that, in any event, the claim is barred by the statute of limitations, id. at 15-18. The plaintiffs dispute both of these positions. Pls.' ALPA Opp'n at 16-22, 23-24, 25-30.

The six-month statute of limitations applicable to claims for breach of the duty of fair representation under Section 10(b) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 160(b), is also applicable to claims asserted under the RLA. See May v. Shuttle, Inc., 129 F.3d 165, 177 (D.C. Cir. 1997) (citing DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 155, 169 (1983)); McConnell v. ALPA, No. 08-1600 (RMC), 2011 WL 204836, at *3 (D.D.C. Jan. 24, 2011). "The [six-month] limitations period begins to run once the plaintiff discovers or should have discovered the acts that form the basis of the [duty of fair representation] claim." Avera I, ___ Fed. App'x ___, 2011 WL 3476824, at *8 (citing Coppage v. U.S. Postal Serv., 281 F.3d 1200, 1204 (11th Cir. 2002)); see also Wood v. Houston Belt & Terminal Ry., 958 F.2d 95, 97 (5th Cir. 1992).

In this case, the plaintiffs' employment by United was terminated as of January 1, 2008. See Am. Compl. ¶ 11. However, they did not initiate this action against the ALPA until December 24, 2008, almost one year after their discharge. The plaintiffs claim that the limitations clock did not begin to run until at least September 29, 2008, because they alleged a

---

[25]  The Court having dismissed the plaintiffs' ADEA claim against the ALPA for failing to exhaust their administrative remedies with respect to the ALPA, it need not address whether the plaintiffs adequately alleged an age discrimination claim under the ADEA against the ALPA.

"continuing claim" against the ALPA. Pls.' ALPA Opp'n at 20.[26] The Court finds that the claim accrued, and the statute of limitations began to run, by the beginning of January 2008 at the latest.

The ALPA's actions throughout 2008 reaffirming their prior position regarding the interpretation of the FTEPA are insufficient to establish a continuing claim. See Int'l Union, UAAAIW of Am. v. NLRB, 363 F.2d 702, 706 (D.C. Cir. 1966) ("An attorney's reaffirmation of the Company's position arising out of a past action should not ordinarily of itself be sufficient to constitute a reoccurrence for the purpose of a limitation provision."); see also Roberts v. Potomac Elec. Power Co., No. 93-7211, 1995 WL 225688, at *3 (D.C. Cir. Mar. 22, 1995) ("Nor can an employee toll the statute of limitations by continually (or belatedly) requesting that the union take further action on its grievance."); Sosbe v. Delco Electronics Div. of General Motors Corp., 830 F.2d 83, 87 (7th Cir. 1987) (if the rule were otherwise, "'a plaintiff could indefinitely delay resolution of labor disputes by merely bombarding his union with tiresome requests.'" (quoting Dozier v. Trans World Airlines, 760 F.2d 849, 852 (7th Cir. 1985))). Thus, "the action accrue[d] when the plaintiff[s] initially learn[ed] (or should have learned)" of the ALPA's interpretation of the FTEPA. Roberts, 1995 WL 225688, at *3. Here, the plaintiffs should have known what the ALPA's position was concerning its interpretation of the FTEPA by January 1, 2008, each having discussed it with the ALPA by that time. See Am. Compl. ¶¶ 50-56; see also McConnell v. Air Line Pilots' Ass'n, In'l, No. 08-1600 (RMC), 2011 WL 204836, at *3 (D.D.C.

---

[26] The plaintiffs allege several actions on the part of the ALPA occurring after their discharge that underlie their fair representation claim. These actions are: (1) communicating with members of Congress and the FAA to promote its interpretation of the FTEPA; (2) filing a brief as amicus curiae in August 2008, in which the ALPA promoted the same interpretation of the FTEPA; (3) asking Congressman Oberstar in March 2008 to request from the FAA that it remove its March 2008 publication; (4) allegedly providing misleading information to the plaintiffs in the first quarter of 2008 regarding whether they should file a grievance against the ALPA; (5) filing a CBA grievance on September 29, 2008, against Continental Airlines, attacking its interpretation of exception (A); and (6) refusing to assist the plaintiffs in challenging United's interpretation of exception (A) of the non-retroactivity provision of the FTEPA through December 24, 2008. See Am. Compl. ¶¶ 60(a)-60(g).

Jan. 24, 2011) ("[W]here the claimant contends that the union improperly abandoned his grievance, the six-month period begins to run when the employee knew or should have known that the union had stopped pursuing his grievance." (citing Cephas v. MVM, Inc., 520 F.3d 480, 488 (D.C. Cir. 2008))); see also Avera I, ___ Fed. App'x ___, 2011 WL 3476824, at *8 (finding duty of fair representation claim against the ALPA untimely where the plaintiff "was terminated in 2007, and all of [the] ALPA's lobbying efforts concerning the FTEPA and the Age 60 Rule must have occurred before the FTEPA was enacted in December 2007.").  The plaintiffs' December 24, 2008 filing date therefore fell outside the six-month limitations period.

The plaintiffs nonetheless argue that the limitations clock was tolled during the six-month period in which the plaintiffs were permitted to file a grievance with the ALPA for unfair representation.  Pls.' ALPA Opp'n at 18.  However, the rule espoused in the case upon which the plaintiffs rely, Frandsen v. Brotherhood of Railway, Airline & Steamship Clerks, 782 F.2d 674 (7th Cir. 1986), is that during the pendency of internal union grievances, the six-month statute of limitations is tolled until union procedures are exhausted or until the union members reasonably discover the futility of pursuing internal remedies.  Id. at 681.  Here, the plaintiffs concede that they did not pursue, much less exhaust, any internal union remedies.  See Am. Compl. ¶ 60(d).  Although they claim that their "unsuccessful communications" with union officials constituted a "constructive attempt" to obtain internal union remedies, Pls.' ALPA Opp'n at 19, the plaintiffs cite no authority supporting such a novel theory of tolling.  Nor is the Court persuaded by the plaintiffs' contention that the limitations period should be tolled on the grounds that the pursuit of internal union remedies would have been futile even if the plaintiffs had tried to pursue them. See id. at 19-20.  The plaintiffs cannot claim that pursuing internal remedies hypothetically may

have been futile; they must have actually attempted to exhaust in order to reap the benefits of tolling. Accordingly, the plaintiffs' fair representation claim is time-barred.[27]

E.     Subject-Matter Jurisdiction

Because the Court finds it necessary to dismiss the ADEA and duty of fair representation claims, the claims over which the Court had federal question jurisdiction, the Court must now determine whether it should entertain the plaintiffs' non-federal claims (wrongful discharge and fraudulent misrepresentation) claims over which the Court may exercise supplemental jurisdiction because they arise out of "the same case or controversy." 28 U.S.C. § 1367 (2006). Under 28 U.S.C. § 1367(c)(3), the Court may decline to exercise supplemental jurisdiction over pendent non-federal claims if it has dismissed all the claims that provide the basis for federal court jurisdiction. In determining whether to exercise jurisdiction over the non-federal claims, the Court must use its "sound discretion." Edmondson & Gallagher v. Alban Towers Tenant's Ass'n, 48 F.3d 1260, 1266 (D.C. Cir. 1995). "'[I]n the usual case in which all federal-law claims are dismissed before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.'" Shekoyan v. Sibley Int'l, 409 F.3d 414, 424 (D.C. Cir. 2005) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)). Here, although comity points towards allowing the plaintiffs to adjudicate these pendent claims in state court (here the Superior Court of the District of Columbia),[28] the balance of factors favors this Court exercising jurisdiction. Although this case is in the early stages of

_____

[27]  Because the plaintiffs' duty of fair representation claim is barred by the statute of limitations, the Court need not address the merits of the claim.

[28]  The Court notes that if the Superior Court had to decide these claims, it would first have to determine if the fraudulent misrepresentation claim was preempted by the RLA, a federal statute.

the litigation process, the parties' motions have been pending for a considerable time due to other pending cases on the Court's calendar, and the parties have submitted voluminous briefings and supplemental briefings during that time. They should therefore not now be forced to wait even longer to renew their motions in the Superior Court. Accordingly, the Court will continue to exercise jurisdiction over the plaintiffs' non-federal claims.

F.    The Plaintiffs' Wrongful Discharge Claim Against United

United asserts that the wrongful discharge claim is subject to mandatory arbitration under the RLA, United Def.'s Mem. at 21-24, and that even if the plaintiffs were at-will employees not bound by RLA arbitration procedures, the wrongful discharge claim fails as a matter of law, id. at 24-25. The plaintiffs respond that their wrongful discharge claim is "extraneous to the CBA," and therefore not subject to RLA arbitration. Pls.' United Opp'n at 24-27; Am. Compl. ¶ 14(b).

1.    The RLA's Minor Dispute Preemption

Labor disputes in the airline industry are governed by the RLA. See 45 U.S.C. § 181. Under the RLA, "disputes concerning the terms of collective bargaining agreements fall into one of two categories." Ass'n of Flight Attendants, AFL-CIO v. USAir, Inc., 24 F.3d 1432, 1436 (D.C. Cir. 1994). "[D]isputes over the formation of collective agreements or efforts to secure them" are considered major disputes, whereas minor disputes "contemplate[] the existence of a collective agreement already concluded." Elgin, Joliet & E. Ry. Co. v. Burley, 325 U.S. 711, 723 (1945). Accordingly, minor disputes arise out of duties and rights created or defined by existing collective bargaining agreements. See Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 252-53 (1994). The RLA mandates that minor disputes be "submitted to arbitration before a system board of adjustment for final and binding resolution." Ass'n of Flight Attendants, AFL-CIO v. USAir, Inc., 71 F.3d 915, 917 (D.C. Cir. 1995) (internal quotation marks and citation

omitted).  Therefore, any state law claim seeking to interpret or enforce such contractual rights is preempted by the RLA.  See Hawaiian Airlines, 512 U.S. at 256.  On the other hand, "a state-law cause of action is not pre-empted by the RLA if it involves rights and obligations that exist independent of the CBA."  Id. at 260.

The plaintiffs contend that their termination grievances "are extraneous to the CBA and cannot be resolved by arbitration or mediation."  Pls.' United Opp'n at 24-27; Am. Compl. ¶ 14(b).  Specifically, the plaintiffs assert that "the [c]omplaint alleges employment contract breach[es,] wrongful discharge[s,] fraud[,] and misrepresentation grounded on United's violation of two [f]ederal laws, the ADEA and the FTEPA," rather than United's violation of the CBA. Pls.' United Opp'n at 24.  In addition, the plaintiffs allege that the CBA does not "provide an RLA arbitration standard of review for adjudicating . . . United's unlawful conduct under the ADEA and the FTEPA as to these pilots."  Id. at 25.  Moreover, the plaintiffs contend that subjecting the wrongful discharge claim to RLA arbitration "would unfairly destroy [their] rights to a jury trial," id., and that "[t]he Supreme Court has rejected application of the [RLA] arbitration mechanism [where it] would have suppressed an employee's judicial remedies to recover damages under similar state or [f]ederal labor statutes imparting rights to the employee independent of the CBA," id. at 25-26.  Finally, the plaintiffs argue that Carswell does not undermine their position because the plaintiff in Carswell "repeatedly alleged [that] the union breach[ed] . . . contractual duties . . . exclusively expressed in the CBA," id. at 26, as opposed to the complaint in this case which focuses on alleged violations of the ADEA and the FTEPA.  For the reasons that follow, the Court agrees with the plaintiffs.

While United cites a plethora of cases for the proposition that wrongful discharge claims constitute minor disputes under the RLA, United Def.'s Mem. at 22-23, each case is

distinguishable from the present case.  For example, the Supreme Court in <u>Hawaiian Airlines</u>

explained that

> a state-law claim of wrongful termination was pre-empted [in
> <u>Andrews v. Louisville & Nashville Railroad</u>, 406 U.S. 320 (1972)],
> <u>not</u> because the RLA broadly pre-empts state-law claims based on
> discharge or discipline, but because the employee's claim was
> firmly rooted in a breach of the CBA itself.  He asserted no right
> independent of that agreement[.] . . . "[T]he <u>only</u> <u>source</u> of [the
> employee's] right not to be discharged, and therefore to treat an
> alleged discharge as . . . 'wrongful' . . . , [was] the [CBA]."

 <u>Hawaiian Airlines</u>, 512 U.S. at 257-58 (emphasis in original) (quoting <u>Andrews</u>, 406 U.S. at

324); <u>see</u> <u>Andrews</u>, 406 U.S. at 324 ("The disagreement [between the parties] turns on the extent

of [the defendant's] obligation to restore [the plaintiff] to his regular duties following injury in an

automobile accident.  The existence and extent of such an obligation in a case such as this will

depend on the interpretation of the collective-bargaining agreement.").  In fact, in all of the cases

cited by United, the claims based on a wrongful discharge allege contractual violations of the

CBA itself or implicate a specific provision of the CBA as the basis for the discharge.  <u>See, e.g.</u>,

<u>Carswell</u>, 540 F. Supp. 2d at 125 (holding that the plaintiff's breach of contract claim based on

the employee's discharge was based on an interpretation of the CBA because the plaintiff

"allege[d] that the ALPA 'breach[ed]' its <u>contractual</u> obligations" (emphasis added)); <u>id.</u> at 120

(indicating that the plaintiff alleged that the ALPA's actions constituted a "material breach of

[the] ALPA's express and implied obligations under the [CBA]" (internal quotation marks

omitted)); <u>see also, e.g.</u>, <u>Capraro v. United Parcel Serv. Co.</u>, 993 F.2d 328, 331-33 (3d Cir. 1993)

(holding that the plaintiff's wrongful discharge claim required interpretation of the CBA because

the plaintiff's claim that "UPS undertook a fraudulent scheme to discharge Capraro for a

fabricated reason" would be untenable if UPS could discharge a probationary employee without

cause under the terms of the CBA); <u>Downey v. American Airlines, Inc.</u>, No. 92-10616, 1992 WL

333969, at *5 (D. Mass. Nov. 2, 1992) (holding that the plaintiff's handicap discrimination claim arising out of the plaintiff's discharge due to a medical finding that the plaintiff was physically unfit for employment as a flight attendant required interpretation of the CBA where the method for establishing the physical fitness of flight attendants was established in the CBA); Fisher v. Hertrich, 680 F. Supp. 1250, 1251-53 (N.D. Ill. 1988) (stating that the plaintiff's claims based on his discharge due to insubordination for refusing to remove a yellow ribbon from his uniform required interpretation of the CBA because "[r]esolving the merits of [the plaintiff's] tort claims would embroil this court in debating the propriety of [the plaintiff's] dismissal" and the discharge "implicated two provisions of the CBA—one on insubordination, and one on wearing pins or emblems"); Adams v. United Airlines, Inc., 578 F. Supp. 26, 27-28 (N.D. Ill. 1983) (holding that the plaintiff's claim of wrongful discharge based on his termination following a work-related injury was "plainly contractual in nature" where the plaintiff was terminated pursuant to a provision in the CBA that provided for the automatic termination of an employee who had been placed on "Extended Illness Status" for a set period of time, but whose status was not extended at the end of that period).[29]

Unlike the situations in the cases cited by United, the plaintiffs in this case do not allege any direct violation of the CBA or any provision therein, and they do not allege that United violated its contractual obligations to them. Rather, they cite "the ADEA[,] the Age 65 Law enacted on Dec. 13, 2007[,] and public policy" as the sources of their right not to be

---

[29] United also cites Robinson v. Union Pacific Railroad, 245 F.3d 1188 (10th Cir. 2001) for the proposition that "employee grievances regarding termination are categorized as minor disputes." Id. at 1191. However, the Court finds Robinson irrelevant because the issue in that case was not whether the dispute should be submitted to arbitration in the first instance, but only whether the arbitration board exceeded the scope of its jurisdiction in the decision it rendered. Id. at 1191-92.

discharged.[30]  Am. Compl. ¶ 77; see Hawaiian Airlines, 512 U.S. at 258 (distinguishing itself

from Andrews because the only asserted source of the plaintiff's right not to be discharged

wrongfully was a state tort law "obligation not to fire [the plaintiff] in violation of public policy

or in retaliation for whistle-blowing").  In addition, the method for determining whether the

plaintiffs in this case were eligible to continue employment as pilots or whether they were barred

from such activities was not established by the CBA, but rather by the FTEPA and the Age 60

Rule.  Thus, interpretation of the CBA in this case will not be determinative of whether the

plaintiffs were discharged wrongfully because they were discharged pursuant to the Age 60 Rule

and the FTEPA, not the CBA.  Consequently, the Court finds that the plaintiffs' wrongful

discharge claim is independent of the CBA, and is therefore not preempted by the RLA.

> ### 2.  The Merits of the Plaintiffs' Wrongful Discharge Claim

Next, United contends that if the plaintiffs' wrongful discharge claim is not preempted by

the RLA, the claim nonetheless fails because as at-will employees under District of Columbia

law they were subject to "discharge . . . for any reason, or for no reason at all."  United Def.'s

Mem. at 24 (citing Adams v. George W. Cochran & Co., 597 A.2d 28, 30 (D.C. 1991)).

Furthermore, United argues that the "very narrow" public policy exception to the employment at-

---

[30]  Although rights derived from the ADEA are independent from a CBA, see Atchison, Topeka and Santa Fe Ry. Co. v. Buell, 480 U.S. 557, 565 (1987) (stressing independence of claims brought under federal statutes from similar claims brought pursuant to the provisions of a CBA); Barrentine v. Arkansas-Best Freight System, Inc., 450 U.S. 728, 737 (1981) ("While courts should defer to an arbitral decision where the employee's claim is based on rights arising out of a [CBA], different considerations apply where the employee's claim is based on rights arising out of a statute . . . designed to provide minimum substantive guarantees to individual workers."),

> [t]o the extent [the] plaintiffs are arguing that [their wrongful discharge claim]
> emanates from the ADEA, a source external to the CBA, the court notes that
> [the] plaintiffs have brought their ADEA claim independently from their
> [wrongful discharge] claim, and that the court has dismissed [the] plaintiffs'
> ADEA claim, without deciding whether the RLA precludes the court from
> hearing the ADEA claim. . . . [The p]laintiffs may not use their [wrongful
> discharge] claim to resurrect [their ADEA claim].

Holmes v. ALPA, No. 08-CV-5232 (KAM) (CLP), 2010 WL 4025594, at *25 n.52 (E.D.N.Y. Oct. 12, 2010).

will doctrine does not apply to the plaintiffs for two reasons. First, United notes that the plaintiffs do not point to any specific public policy that it allegedly violated by terminating their employment. Id. at 25. Second, United argues that "[e]ven giving [the p]laintiffs the benefit of the doubt by assuming they rely on the ADEA in this regard," the ADEA "may not serve as the 'public policy' basis for a wrongful discharge claim under D.C. law" because the ADEA "already contains a comprehensive remedial scheme to address [the p]laintiffs' allegations of age discrimination." Id.

United is correct that under District of Columbia law it is well established that "an employer may discharge an at-will employee at any time and for any reason, or for no reason at all." Adams, 597 A.2d at 30. However, the District of Columbia does recognize "a very narrow exception to the [employment] at-will doctrine under which a discharged at-will employee may sue his or her former employer for wrongful discharge when the sole reason for the discharge [was] the employee's refusal to violate the law as expressed in state or municipal regulation." Id. at 34. Moreover, in Carl v. Children's Hospital, 702 A.2d 159 (D.C. 1997), the District of Columbia Court of Appeals held that "the 'very narrow exception' created in Adams should not be read in a manner that makes it impossible to recognize any additional public policy exceptions to the at-will doctrine that may warrant recognition." Id. at 160. Commenting on the majority's holding in Carl, four concurring judges observed:

> This court should consider seriously only those arguments that reflect a clear mandate of public policy - i.e., those that make a clear showing, based on some identifiable policy that has been "officially declared" in a statute or municipal regulation, or in the Constitution, that a new exception is needed. Furthermore, there must be a close fit between the policy thus declared and the conduct at issue in the allegedly wrongful termination.

<u>Carl</u>, 702 A.2d at 164 (Terry, J., concurring) (footnotes omitted); <u>see also</u> <u>Liberatore v. Melville</u>

<u>Corp.</u>, 168 F.3d 1326, 1331 (D.C. Cir. 1999) (stating that "the effective holding of the en banc

court" in <u>Carl</u> was that circumstances other than an employee's outright refusal to violate a law

can constitute grounds for a public policy exception if "solidly based on a statute or regulation

that reflects the particular public policy to be applied").  The District of Columbia Court of

Appeals has also expanded the scope of the public policy exception to encompass contractual

employees covered by a CBA.  <u>See</u> <u>Byrd v. VOCA Corp. of Washington, D.C.</u>, 962 A.2d 927,

933-34 (D.C. 2008) (stating that a cause of action for wrongful discharge is available not only to

at-will employees, but also to contractual employees, so long as the employer "acted in

contravention of an identifiable policy that has been officially declared in a statute or municipal

regulation, or in the Constitution," as required by the <u>Adams</u>-<u>Carl</u> line of cases (internal

quotation marks omitted)).

      The District of Columbia Court of Appeals having found that the at-will employee public

policy exception applies to both at-will and contractual employees, the only question that

remains is whether the plaintiffs have adequately alleged a public policy exception that would

permit their wrongful discharge claim to proceed.  For the reasons that follow, the Court answers

this question in the negative.

      The wrongful discharge claim cannot be maintained not only because the plaintiffs fail to

respond to any of United's arguments regarding the inapplicability of the public policy

exception, <u>see</u> <u>Buggs v. Powell</u>, 293 F. Supp. 2d 135, 141 (D.D.C. 2003) (holding that "when a

plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised

by the defendant, a court may treat those arguments that the plaintiff failed to address as

conceded"), but also because they fail to specify <u>any</u> public policy that would permit a tort-based

wrongful discharge claim to proceed. Even assuming that the plaintiffs are seeking to use the ADEA as the public policy basis for their wrongful discharge claim, the ADEA cannot serve such a purpose because it provides its own remedial scheme. See Carson v. Sim, No. 04-1641 (RWR), 2011 WL 1526976, at *8 (D.D.C. Apr. 22, 2011) (holding that the plaintiff failed to plead a claim for wrongful discharge because the complaint did not "identif[y] . . . . [any] public policy violated by [the plaintiff's] termination" that was "firmly anchored in either the Constitution or in a statute or regulation which clearly reflect[ed] the particular 'public policy' being relied upon" and arose "from a statute or regulation that [did] not provide its own remedy" (internal quotation marks omitted) (quoting Potts v. Howard Univ. Hosp., 736 F. Supp. 2d 87, 97 (D.D.C. 2010))); see also 29 U.S.C. § 626(b) (providing remedies for violation of the ADEA). Permitting the plaintiffs to use the ADEA as the public policy basis for their wrongful discharge claim would allow them to "eschew the administrative remedy and instead obtain recovery against the employer on a tort theory of wrongful discharge," Nolting v. Nat'l Capital Group, 621 A.2d 1387, 1389-90 (D.C. 1983), and in effect resurrect the dismissed ADEA claim.[31]

Thus, not only does the plaintiffs' wrongful discharge claim fail because termination of these plaintiff pilots was appropriate under the Age 60 Rule, which applied to the plaintiffs and was an act protected by the FTEPA, but also because the plaintiffs fail to assert a valid public policy to serve as the basis for their claim. Accordingly, summary judgment is granted to United on Count 4 of the complaint.

G.      The Plaintiffs' Common Law Fraud and Misrepresentation Claim

The ALPA argues that the claim for fraud and misrepresentation "is nothing more than a restated claim for breach of the federal duty of fair representation, and is accordingly preempted"

---

[31]  The Court also notes that the FTEPA cannot serve as the basis of a public policy exception because the FTEPA did not apply to the plaintiffs.

by the RLA. ALPA Def.'s Mem. at 20-22. In addition, United alleges that the fraud claim is a minor dispute subject to mandatory arbitration under the RLA, United Def.'s Mem. at 26, was not pleaded with sufficient specificity under Federal Rule of Civil Procedure 9(b), id. at 27-28, and fails on the merits, id. at 28-31. The plaintiffs counter all of these arguments. See Pls.' ALPA Opp'n at 25; Pls.' United Opp'n at 24-27, 33-41.

1. The RLA's Minor Dispute Preemption Argument

Like the wrongful discharge claim, the plaintiffs' fraud claim is similarly not a minor dispute under the RLA. Nowhere in their allegations of fraud do the plaintiffs allege any violation of the CBA. Rather, the plaintiffs' fraud claim centers squarely on the defendants' interpretation of the FTEPA. For example, the plaintiffs contend that "it was United's erroneous and dissembling interpretation of two Federal statutes—not of the CBA—that . . . inflicted fraud upon the plaintiffs." Pls.' United Opp'n at 25; see also Am. Compl. ¶¶ 81-83, 87-90 (focusing on United's and the ALPA's allegedly incorrect and misleading statements of law on the interpretation and application of the FTEPA and the plaintiffs' rights based on the FTEPA as the basis for the fraud claim). Thus, interpretation of the CBA in this case will not be determinative of whether the purported representations and omissions by the defendants were false because a determination of the falsity of the representations requires interpretation of the FTEPA, not the CBA. Cf. Monroe v. Mo. Pac. R.R., 115 F.3d 514, 518 (7th Cir. 1997) (holding that interpretation of the CBA was required to determine the defendant's retaliatory intent in discharging the plaintiff after he suffered work-related injuries because, among other things, "the standards regarding an employee's physical condition" were "implied terms of the CBA"); Kollar v. United Transp. Union, 83 F.3d 124, 126 (5th Cir. 1996) (holding that the plaintiff's fraud claim was preempted by the RLA because the gravamen of the fraud claim was "that the

Union made false and misleading statements concerning [the p]laintiffs' seniority rights," which was "controlled by the CBA and modifying agreements," and, therefore, to prove the falsity of the representations, the plaintiffs would have to demonstrate that the Unions representations differed from the seniority provisions of the CBA); Capraro, 993 F.2d at 333 (holding that the plaintiff's claim that the defendant "undertook a fraudulent scheme to discharge Capraro for a fabricated reason" required interpretation of the CBA because it presented an issue of whether the defendant could discharge the plaintiff without cause under the terms of the CBA); Allen v. United Trans. Union, 964 F.2d 818, 821- 22 (8th Cir. 1992) (holding that fraud claim was preempted because allegedly false representation concerned seniority rights and seniority rights were governed by the CBA); Melanson v. United Air Lines, Inc., 931 F.2d 558, 562-63 (9th Cir. 1991) (stating that demonstration of the falsity of United's alleged representations regarding its weight program required a showing that the relevant provisions of the CBA differed significantly from those representations). Beyond a determination of the falsity of the alleged representations, the plaintiffs' fraud claim depends "upon purely factual questions" concerning the parties' conduct and the defendants' motive. Hawaiian Airlines, 512 U.S. at 261 (quoting Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 407 (1988)). Consequently, the Court finds that the plaintiffs' fraud claim is independent of the CBA, and is therefore not preempted by the RLA as a minor dispute.

2.      Preemption by the Federal Duty of Fair Representation

The District of Columbia Court of Appeals has held that "the federal duty of fair representation preempts identical state law claims." May, 129 F.3d at 179. Thus, where duties imposed under state law are "'mere refinements' of the federal duty of fair representation, and not 'separate and distinct' from that duty," the state law claims are preempted by the RLA.

<u>Nellis v. ALPA</u>, 15 F.3d 50, 51 (4th Cir. 1994) (citing <u>Nellis v. ALPA</u>, 805 F. Supp. 355, 360

(E.D. Va. 1992)).  "A claim is a 'mere refinement' of the duty of fair representation if it is based

on the same conduct that would support a federal duty of fair representation claim or [if it] seeks

to vindicate the same rights as the federal duty of fair representation." <u>Cooper v. TWA Airlines</u>,

349 F. Supp. 2d 495, 508 (E.D.N.Y. 2004) (quoting <u>Nellis</u>, 805 F.Supp. at 360).

      The plaintiffs concede that the allegations underlying the fraudulent misrepresentation

claim against the ALPA are incorporated into the fair representation claim.  <u>See</u> Pls.' ALPA

Opp'n at 24.  They nevertheless contend that the fraudulent misrepresentation claim should not

be preempted because "[t]he standards for pleading and for adjudication of fraud and

misrepresentation are distinct from the fair representation issue." <u>Id.</u>  This, however, is not the

standard for determining preemption by the duty of fair representation.  Comparing the conduct

underlying the duty of fair representation claim with the conduct underlying the fraudulent

misrepresentation claim, the Court holds that the fraudulent misrepresentation claim is no more

than a "mere refinement" of the duty of fair representation claim.

      The plaintiffs' duty of fair representation claim is based on several actions by the ALPA,

including its alleged non-disclosure of the fact that the plaintiffs would be terminated under the

FTEPA, Am. Compl. ¶ 26(b), and concealment of the "procedures necessary to preserve [the

plaintiffs'] rights under the FTEPA," <u>id.</u> ¶ 50(b).  These alleged omissions also form the basis of

the plaintiffs' fraudulent misrepresentation claim.  <u>See</u> Am. Compl. ¶ 83 (stating that the

fraudulent misrepresentation claim is based on the ALPA's "willful and material disclosures and

non-disclosures as to what the rights of the plaintiffs were after the enactment of the FTEPA").

The plaintiffs themselves frame the duty of fair representation claim as the failure of the ALPA

to fulfill its duty to "tell the member the truth," and not "intentionally mislead and stonewall[]

these union members," regarding the application of the FTEPA's non-retroactivity provisions. Pls.' ALPA Opp'n at 24. In essence, the plaintiffs allege that the ALPA's fraudulent conduct was dishonest and in bad faith. Plaintiffs' common law fraudulent misrepresentation claim against the ALPA therefore seeks to vindicate the same rights protected by the federal duty of fair representation. Thus, the fraudulent misrepresentation claim against the ALPA is preempted by the RLA.[32] If the plaintiffs' claim for breach of the duty of fair representation is inadequate, the "plaintiffs cannot substitute . . . a state law claim arising out of the same facts and theories of obligation or 'mere refinements' of those theories." Cooper, 349 F. Supp. 2d at 508; see also Nellis v. ALPA, 805 F. Supp. 355, 358-60 (E.D. Va. 1992), adopted by Nellis v. ALPA, 15 F.3d 50 (4th Cir. 1994) (holding that the plaintiffs could not assert a common law contract claim based on promises made by the ALPA to its members and then "reneging" on those promises, "even if such conduct was not sufficiently 'arbitrary, discriminatory, or in bad faith' to satisfy the federal standard for breach of the duty of fair representation" because "[i]n essence, the claim . . . is that the plaintiffs were not fairly represented by the Union," and it was therefore preempted by the fair representation claim).[33]

---

[32] To the extent Count 3 of the complaint asserts a claim for breach of a fiduciary duty, see Am. Compl. ¶ 15(b) ("As a union, defendant ALPA was under a fiduciary obligation and duty to each of its members subject to the common law of fiduciary relationships as well as subject to the CBA."); id. ¶ 75 ("Defendant ALPA's knowing and willful actions . . . breach[ed] common law and contractual fiduciary duties owed plaintiffs."), the claim is duplicative of, and therefore preempted by, the duty of fair representation claim. See Miranda v. Nat'l Postal Mail, 219 Fed. App'x 340, 343 (5th Cir. 2007) (holding that the plaintiff's claim for breach of fiduciary duty was preempted because "the duty allegedly breached by the [d]efendants ar[ose] from their status as [the plaintiff's] collective bargaining representatives, [and] thus . . . [the plaintiff's] claims [were] . . . properly characterized as duty of fair representation claims"); see also Clark v. Newport News Shipbuilding & Dry Dock Co., 937 F.2d 934, 938 (4th Cir. 1991) ("Any duty a union owes its members is a duty arising out of the collective-bargaining agreement and its express and implied obligations. Consequently, in order to point to a duty beyond the duty of fair representation, the employee must be able to identify specific language in the agreement creating an additional obligation or right." (internal citations omitted)).

[33] Because the fraudulent misrepresentation claim against the ALPA is preempted by the federal standard for the duty of fair representation, and must therefore be dismissed, the Court need not further discuss the plaintiffs' fraudulent misrepresentation claim as it pertains to the ALPA.

3.     <u>The Merits of the Plaintiffs' Fraudulent Misrepresentation Claim Against United</u>

Under District of Columbia law, "[f]raudulent misrepresentation requires proof of '(1) a false representation (2) made in reference to a material fact, (3) with knowledge of its falsity, (4) with the intent to deceive, and (5) an action that is taken in reliance upon the representation.'" <u>Chedick v. Nash</u>, 151 F.3d 1077, 1081 (D.C. Cir. 1998) (quoting <u>Hercules & Co., Ltd. v. Shama Restaurant Corp.</u>, 613 A.2d 916, 923 (D.C. 1992)). "[T]he plaintiff must also have suffered some injury as a consequence of his reliance on the misrepresentation." <u>Id.</u> (citing <u>Dresser v. Sunderland Apartments Tenants Ass'n</u>, 465 A.2d 835, 839 (D.C. 1983)).

The plaintiffs' fraudulent misrepresentation claim against United is based on United's alleged "unreasonable interpretation" of the FTEPA, <u>see</u> Am. Compl. ¶¶ 81-82 (alleging that United's interpretation denying application of exception (A) to the FTEPA's non-retroactivity provision to the plaintiffs was "unreasonable" as it was "supported by no accepted rule of statutory construction or rule of law"), as well as United's purported "willful and material disclosures and non-disclosures as to what the rights of the plaintiffs were after the enactment of the FTEPA on December 13, 2007 and the demise of the Age 60 Rule having any continuing legal effect after December 12, 2007," which, the plaintiffs claim, United "knew or should have known were incorrect," <u>id.</u> ¶ 83. The complaint further asserts that United "intended the plaintiffs . . . to rely on these disclosures and non[-]disclosures" and that the plaintiffs "did so rely to their enormous detriment and damages of loss of a five years earnings and benefits and seniority at the highest levels in the aviation industry." <u>Id.</u> ¶¶ 85-86.

This claim fails for several reasons. First, the Court has already determined that United was correct in concluding that exception (A) to the FTEPA's non-retroactivity provision does not apply to the plaintiffs, <u>see</u> <u>supra</u> Part III.A.1, so their fraudulent misrepresentation claim cannot

be predicated on United's supposed "unreasonable interpretation" of the FTEPA. Second, and on related grounds, insofar as the plaintiffs are attempting to hold United liable for statements made and actions taken "in conformance with" the FTEPA, the claim is barred by the statute's compliance protection provision. See supra Part III.A.3. Finally, regarding United's alleged misrepresentations and non-disclosures concerning the plaintiffs' rights after the FTEPA's enactment, the plaintiffs have not alleged or otherwise shown that they suffered ascertainable injuries "as a consequence" of their reliance on United's actions or inactions. See Chedick, 151 F.3d at 1081. Although the complaint alleges that the plaintiffs suffered damages in the form of "loss of five years earnings" and "benefits and seniority at the highest levels in the aviation industry," Am. Compl. ¶ 86, those purported injuries, as previously discussed, were simply results of the FTEPA's application, and therefore would have been incurred by the plaintiffs irrespective of United's alleged fraudulent conduct. Nor is the Court persuaded by the plaintiffs' argument that they detrimentally relied on United's alleged "non-disclosures" by not applying for a "new-hire/zero seniority position" under exception (B) to the FTEPA's non-retroactivity provision. See Pl's United Opp'n at 35. Even if the plaintiffs had applied for a job pursuant to exception (B), there is no guarantee they would have actually obtained such a job; this claimed injury is therefore too remote to sustain the plaintiffs' fraudulent misrepresentation claim.

## IV. Conclusion

For the foregoing reasons, the ALPA's motion to dismiss is granted in its entirety, United's motion for summary judgment is granted in its entirety, and the plaintiffs' motion for partial summary judgment as to the ADEA claim is denied. The Court's rulings are summarized as follows. The Court agrees with the defendants that the FTEPA's exception (A) to the non-retroactivity provision does not apply to the plaintiffs because they were not employed as

"required flight deck crew members" on December 13, 2007.  And the FTEPA's compliance protection provision immunizes both defendants from liability for alleged age discrimination to the extent the plaintiffs are proceeding against the ALPA and United based on their compliance with the Age 60 Rule or the FTEPA.  The Court further finds that the FTEPA does not violate the due process and equal protection clauses of the Fifth Amendment, and that the FTEPA does not constitute a bill of attainder.

In addition, the Court concludes that the plaintiffs failed to exhaust their administrative remedies as to their ADEA claim against the ALPA, but exhausted those remedies as to United. The plaintiffs have, however, failed to state a valid ADEA claim against United.  The Court also finds that the claim for breach of the duty of fair representation is barred by the statute of limitations.  Nevertheless, despite its dismissal of the ADEA claim against both defendants, and dismissal of the fair representation claim against the ALPA, the Court opts to retain supplemental jurisdiction over the remaining non-federal claims of wrongful discharge and fraudulent misrepresentation.

As to the plaintiffs' wrongful discharge and fraudulent misrepresentation claims, the Court finds that both claims are independent of the CBA, and therefore are not preempted by the RLA as minor disputes.  The fraudulent misrepresentation claim against the ALPA and breach of fiduciary duty claim, however, are both preempted by the federal duty of fair representation. Furthermore, the Court finds that the wrongful discharge claim fails on the merits because the plaintiffs, as at-will employees, have not adequately alleged a public policy exception that would permit their wrongful discharge claim to proceed, and the plaintiffs' fraudulent misrepresentation claim fails on the merits as well.

Based on these rulings, the Court grants the ALPA's motion to dismiss in its entirety. Counts 2 and 3 of the complaint are therefore dismissed, and Count 5 of the complaint is dismissed as to the ALPA. The Court grants United's motion for summary judgment on Counts 1, 4, and 5 of the complaint. And the plaintiffs' motion for partial summary judgment as to Count 1 of the complaint is denied.

**SO ORDERED** this 21st day of October, 2011.[34]

REGGIE B. WALTON
United States District Judge

---

[34] The Court will contemporaneously issue a final Order consistent with this Memorandum Opinion that will supersede the non-final Order previously entered in this action on September 28, 2011. Although the non-final Order indicated that United's motion would be granted in part and denied in part, the Court has concluded, as discussed above, that the motion should be granted in its entirety. The final Order reflects this change.